**Ronald James LAWRENCE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 22317.**

United States Court of Appeals
Ninth Circuit.

Sept. 23, 1968.

Richard Dowdall (argued), Tucson, Ariz., for appellant.

Rubin Salter, Jr., Asst. U. S. Atty., (argued), Edward E. Davis, U. S. Atty., Jo Ann D. Diamos, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before MADDEN, Judge of the Court of Claims, HAMLEY, Circuit Judge, and BOLDT, District Judge.*

HAMLEY, Circuit Judge:

In this proceeding under the Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5037 (1964), Ronald James Lawrence was adjudged to be a juvenile delinquent because of his violation of the Dyer Act, 18 U.S.C. § 2312 (1964). Appealing to this court, Lawrence contends, among other things, that the evidence of guilt is insufficient to support the judgment.

Defendant was charged with having transported a stolen vehicle, namely, a 1963 Pontiac automobile, in foreign commerce from Niagara Falls, Ontario, Canada, to Safford, Arizona, in violation of section 2312. In order to obtain a conviction on this charge, it was necessary for the Government to prove that: (1) the Pontiac had been stolen, (2) defendant transported it on some part of the trip from Niagara Falls to Safford, (3) at the time of such transportation defendant knew that the Pontiac had been stolen, and (4) defendant so transported the automobile with the intent to permanently or temporarily deprive the owner of the rights and benefits of ownership. See Jones v. United States, 9 Cir., 378 F.2d 340, 341.

According to the evidence offered by the Government, the Pontiac, bearing license number 815–468 67 Ont., was owned by David John Speck, 3203 Stanford Street, Niagara Falls, Ontario. It was stolen from the driveway of his home sometime between 11:00 p. m., May 1, 1967, and 7:30 a. m. the next morning.

About 5:15 p. m., May 11, 1967, Arizona Highway Patrolman John C. Matthews received information that a stolen convertible Pontiac, bearing Ontario plates, was en route to Arizona from New Mexico. About twenty minutes later, Matthews observed a Pontiac bearing these license plates being driven along U. S. 70 past the point where he was parked. There were three persons in the Pontiac, all in the front seat. Matthews stopped the automobile and asked the driver to step out.

The driver turned out to be Larry Lawrence, the twenty-two-year-old brother of defendant Ronald Lawrence. Ronald, who was then seventeen years old, and James Friesman, were the other two persons in the front seat. Matthews placed Larry Lawrence under arrest. Matthews' superior officer, Sgt. Chewning, arrived on the scene shortly afterwards and placed Ronald Lawrence and Friesman under arrest.

At about 10:30 a. m. the next morning, Wayne Mack, a special agent of the Federal Bureau of Investigation, transported defendant in his official vehicle from the Safford Sheriff's office to the United States Commissioner in Globe, Arizona. The drive required about two hours. Mack testified as follows concerning a conversation between him and

---

* The Honorable George H. Boldt, United States District Judge for the Western District of Washington, sitting by designation.

defendant which occurred during the course of this drive:

"In the beginning, there was some comment made by the defendant boasting about the superiority of the Royal Canadian Mounted Police Officers in Canada as compared to the officers in the United States, and further he had an uncle who was with the Royal Canadian Mounted Police. And I said, 'What do you base it on?' And he says, 'Well, we got stopped in four different States, and if the officers had been sharper they could have had us before, before we got stopped in Safford,' and I said, 'Where were you stopped in these four States?' And he said, 'I have said too much already, I'm not saying any more.'"

This is the full extent of the evidence offered by the Government and received at the trial. Defendant did not take the witness stand, nor did he offer any other evidence.

The evidence reviewed above warrants a finding that the Pontiac had been stolen. Having in view the permissible inferences arising from defendant's statements to Mack while being transported from Safford to Globe, it also warrants a finding that defendant was a passenger in the Pontiac while it was being driven through four states and that, during this drive, defendant knew that it was a stolen vehicle.

In our opinion, however, this evidence provides no basis for a finding that defendant participated in any of the transportation. The United States Attorney apparently recognized this weakness in the Government's case during the course of the trial. The prosecutor told the court that to "cause transportation, you either drive it or provide money for the gas. * * *" The prosecutor proposed to prove that defendant provided money for the gasoline by showing that a substantial amount of money was found on defendant's person after his arrest. Counsel for defendant objected and the objection was sustained. The trial court ruled that it would be "pure speculation" to assume, from the defendant's posses-

sion of money when arrested, that he must have paid for part of the transportation.

As indicated by its oral statements from the bench, the trial court based its finding that defendant participated in the transportation exclusively upon the statements made by defendant to the F.B.I. agent on the drive from Safford to Globe. The court thought that because of the "we" and "us" in defendant's remark ("* * * we got stopped in four different States, and if the officers had been sharper they could have had us before, before we got stopped. * *,'") it could be inferred that defendant was part of a joint venture to transport the automobile across state lines. The trial court expressed the view that if defendant had not participated in the transportation, he would have said something like "My brother would have been stopped," or "The driver would have been picked up." The trial court also drew significance from the fact that defendant did not express to agent Mack surprise to learn that the vehicle had been stolen.

We think this evidence is too tenuous a thread to support an inference of active participation in the interstate transportation. Defendant was charged with participating in the substantive offense, not with engaging in a conspiracy.

■ Had the Government proved that sometime during the interstate journey, defendant had driven the automobile, provided gasoline, or in some other way actively assisted in the illegal enterprise, the evidence of participation in the offense would have been sufficient. But no such evidence was received.

■ Lacking such direct evidence of participation, had the Government proved that, after the Pontiac was brought into the United States, it was in the possession of defendant, or in the joint possession of defendant and his companions, it would be permissible to infer that he participated actively in the transportation. See Morandy v. United States, 9 Cir., 170 F.2d 5, 6; Allison v. United States, 10 Cir., 348 F.2d 152; Travers v.

United States, 118 U.S.App.D.C. 276, 335 F.2d 698, 700–701.

But aside from the fact that the trial court made no finding that defendant was in single or joint possession of the vehicle, there is no evidence in this record to support such a finding. To possess means to have management, care, dominion, authority and control, singly or jointly. See United States v. Wainer, 7 Cir., 170 F.2d 603, 606. Being a mere passenger in a stolen automobile does not prove possession. See Wheeler v. United States, 10 Cir., 382 F.2d 998, 1000; Barfield v. United States, 5 Cir., 229 F.2d 936, 942–943 (concurring opinion). As this court recently said:

" * * * where convicting presumptions are projected on possession, the evidence of possession ought to be very clear to satisfy the test of guilt beyond a reasonable doubt." Julian v. United States, 9 Cir., 391 F.2d 279, 280.

The failure of defendant to express surprise and his use of the pronouns "we" and "us" warrant a finding that he was an occupant of the car during the interstate drive, with knowledge that it had been stolen. But, in our opinion, these items of evidence do not prove beyond a reasonable doubt that he was in joint possession of the automobile during all or part of this trip, that he drove the vehicle some of the time, that he paid for some of the gasoline, or that in any other way he actively associated himself with the illegal enterprise.

We therefore conclude that there was insufficient evidence to support the judgment.

In view of our conclusion on the question of the sufficiency of the evidence we do not reach the two additional contentions advanced here by defendant, namely that (1) under the terms of the Juvenile Delinquency Act he was unconstitutionally required to waive a jury trial, and (2) evidence against him was obtained as a result of a custodial interrogation conducted in violation of principles announced in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527;

Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

Reversed.