William Joseph **RODGERS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 21543.

United States Court of Appeals Ninth Circuit.

Oct. 28, 1968.

Byron M. Meredith (argued), Reno, Nev., for appellant.

Robert S. Linnell (argued), Asst. U. S. Atty., Joseph L. Ward, U. S. Atty., Las Vegas, Nev., for appellee.

Before JOHNSEN*, BARNES and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Rodgers appeals from a judgment of conviction, upon the verdict of a jury, of a violation of the Dyer Act, 18 U.S.C. § 2313, interstate transportation of a stolen motor vehicle, knowing the same to have been stolen. We reverse.

1. *The proceedings before a Commissioner in Colorado.*

Rodgers was arrested in Colorado where he was brought before a United States Commissioner. The record shows full compliance with the requirements of Rule 40(b), F.R.Crim.P. Rodgers waived hearing and the appointment of counsel. A warrant of removal issued in due course. It is now urged that the Colorado Commissioner should have gone farther and made sure that Rodgers fully understood what he was doing. We do not decide this question. For all that appears in the record, the Commissioner did what Rodgers says that he should have done. The record does not support the contention. No decided case that we know of supports it either.

2. *The voir dire examination of the jury.*

Nothing in the record supports the assertions now made that counsel had no basis on which to exercise peremptory challenges because counsel was not permitted to examine each juror individually. Pursuant to Rule 24(a), F.R.Crim.P., the trial judge conducted the voir dire examination of the jury. When he finished, he asked if Rodgers' counsel had any questions that he wanted the judge to ask "as to the jurors' qualifications." The answer was "no." Counsel did not ask leave to put any question to any juror himself and did not object to any of the judge's questions or to the procedure. We have previously refused to hold that the procedure authorized by Rule 24(a) is unconstitutional because it permits the judge to conduct the voir dire examination. Hamer v. United States, 9 Cir., 1958, 259 F.2d 274; Fredrick v. United States, 9 Cir., 1947, 163 F.2d 536.

3. *Sufficiency of the evidence.*

It is claimed that the evidence is not sufficient to support the verdict. No motion for judgment of acquittal under Rule 29, F.R.Crim.P., or for a new trial under Rule 33 was made. We could treat the claim as waived, but need not do so. Beckett v. United States, 9 Cir., 1967, 379 F.2d 863; Robbins v. United States, 9 Cir., 1965, 345 F.2d 930, 932.

The trial was brief. Hilary E. Bishop of Bethany, Oklahoma, testified that early in May, 1966, he owned a Chevrolet '66 Caprice automobile. He went away on a business trip and left it with his wife Clara. He gave no one but his wife permission to use it. He bought the car, new, in December, 1965, from a Yukon, Oklahoma, Chevrolet dealer. He identified certified and exemplified copies of an application for a certificate of title to the car (exhibit 2) and of the face of a certificate of title (exhibit 1).

* Honorable Harvey M. Johnsen, Senior Circuit Judge, Eighth Circuit, sitting by designation.

These were received in evidence without objection. Clara Bishop testified that while Hilary was away the car was put by her in a garage on a Saturday, and that she discovered two or three days later that it was gone. No one had her permission to use it.

Roy S. Vezeris testified that he was sales manager of Gaudin Motor Company in Las Vegas. On May 11, Rodgers sold the Chevrolet car to him.

"A. So I went out and looked at the car. He had a valid Oklahoma title. I checked the motor number of the title against the automobile. He went into our office.

* * *

Q. What was the result of your comparison of the serial number?

A. The title had the proper motor number that the automobile had."

The prosecutor then had him identify the "title" (exhibit 3) and state that the identification number on it was the same as that of the car. This title was offered in evidence by the prosecutor and received without objection. The government rested. Rodgers did not take the stand or offer any evidence.

In his opening argument, the prosecutor made the following statements:

"Now, although it is not necessary for the Government to prove who actually stole the car, I believe His Honor will tell you that if you find as a fact, No. 1, that the motor vehicle described was stolen in one state and recently thereafter was possessed by the defendant, actually possessed in a second state, then you may draw the inference and find as reasonable men and women that the defendant transported it from the first state to the second state knowing that it was stolen.

* * *

"The important thing is that I want to get across to you, to give your utmost attention to His Honor when he is telling you what the law is, *because the Government is depending on this inference*, and if you don't understand it when the Judge tells it to you, you probably never will, because, as a rule, you don't get a second chance to have it given to you.

"*Again, if you find that the car was stolen in one state, recently thereafter was possessed in the second state, then you may draw the inference and find as a fact, as reasonable people, that the defendant not only transported it from the first state to the second state, but that he knew that it was stolen.*" [Emphasis added.]

In its instructions, the court emphasized and re-emphasized the inferences arising from unexplained possession:

"Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.

"And possession in one State of property recently stolen in another State, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession not only knew it to be stolen property, but also transported it, or caused it to be transported, in interstate commerce.

* * *

"If you should find beyond a reasonable doubt from the evidence in the case that the motor vehicle described in the indictment was stolen, and was transported in interstate commerce as charged, and that, while recently stolen, the property was in the possession of the accused in another State than that in which it was stolen, the jury would ordinarily be justified in drawing from those facts the inference that the motor vehicle was transported, or caused to be transported, in interstate commerce by the accused, with knowledge that it was stolen, un-

less possession of the recently-stolen property by the accused in such other State is explained to the satisfaction of the jury by other facts and circumstances in evidence in the case.

"In considering whether possession of recently-stolen property has been satisfactorily explained, the jury will bear in mind that, in the exercise of Constitutional rights, the accused need not take the witness stand and testify. Possession may be satisfactorily explained through other circumstances, other evidence, independent of any testimony of the accused.

"It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits the jury to draw from possession of recently-stolen property. If any possession the accused may have had of recently-stolen property is consistent with innocence, the jury should acquit the accused.

"As stated before, one essential element of the offense charged is knowledge of the accused that the automobile was a stolen motor vehicle, at the time the offense was committed. If you should find that the accused, in good faith believed that he owned some interest in the automobile in question, and also in good faith believed that he had the right to possession of a motor vehicle, at the time and place of the alleged offense, then the accused cannot be found to have wilfully transported, or caused to be transported, a stolen motor vehicle in interstate commerce, and you should acquit him."

We do not quote these remarks or instructions to indicate that they were improper or erroneous (we do not decide that question), but only to emphasize that the case turned entirely upon the jury's being able to infer from Rodgers' possession of the car that he had trans-

ported it, or caused it to be transported, interstate, knowing that it had been stolen.

We do not think that the inferences were permissible here. It was the government that proved that Rodgers had "title" to the car, and that the title was, in the words of the government's witness, "valid." The "title" is valid on its face. Bishop's title is four months earlier, and there is nothing in exhibits 1 or 2 inconsistent with Bishop's having transferred the title. Exhibit 3 shows that an Oklahoma "title" has on its reverse side forms for execution of assignments. Exhibit 2 shows only the face of the Bishop title. Bishop did not testify that he did not assign; the prosecution did not ask. Exhibit 3 does contain some entries inconsistent with those in exhibit 1, the Bishop title. But these are not such as to enable a lay jury, without more, to infer that Rodgers' title (exhibit 3) is, contrary to Vezeris' testimony, invalid. What is more important, there is nothing in the record inconsistent with Rodgers having the same good faith belief in the validity of his title that Vezeris had. There is nothing from which it can be inferred that Rodgers knew of the inconsistencies between exhibits 1 and 3, and it is his state of mind, his knowledge that the vehicle was stolen, that is in issue. In short, we think that the government itself provided an "explanation" of Rodgers' possession that stands basically uncontradicted in this record.

We do not here revive the often stated but long discredited notion that the government is "bound" by the testimony of every witness that it calls or the contents of every document that it puts in evidence.[1] That is not the point here. Here, the government introduced evidence contrary to the inferences that it wanted the jury to draw, thus itself "explaining" Rodgers' possession, and did nothing to relieve itself of

1. Jerrold Electronics Corp. v. Westcoast Broadcasting Co., Inc., 9 Cir., 1965, 341 F.2d 653, 666; Factor v. C.I.R., 9 Cir., 1960, 281 F.2d 100, 121; see Northern Pacific Ry. Co. v. Everett, 9 Cir., 1956, 232 F.2d 488, 491.

the effect flowing from that evidence. On this record, the inferences are not available to it.[2]

 We do not mean that in every case where some of the government's evidence is arguably contrary to an inference that it wishes to have the jury draw from other evidence, the inference may not be drawn. We limit our holding to this case. Here, the government's case rests entirely on two inferences to be drawn from one unexplained fact—possession of the car. These inferences, and nothing else in the record, led to the finding of two of the three essential facts constituting the offense. Possession of a stolen car within a state is *not* a federal offense. The government has a heavy burden of proof in a criminal case; the defendant has none. The inferences (they are sometimes called presumptions) arising from possession relieve the government of much of that burden. As a practical matter, they tend to shift the burden to the defendant, however piously we may say and tell juries that they do not. Therefore, when the government's case includes an "explanation," the apparent validity of which is not offset by any substantial evidence, we think that the government is no longer entitled to the inferences—it has not really met its heavy burden of proof.

Nor would it be an answer to say that, in fairness, the prosecutor was required to produce Rodgers' title, exhibit 3, so that Rodgers could introduce it if the government did not. If that had happened here, the government would still have had the burden of proof, and would not have met it. The government may well be able to prove its case on another trial, however, and we therefore do not reverse with directions to dismiss.

Other points raised need not be discussed. They are either not supported by the record on appeal or presumably will not arise during another trial.

Reversed and remanded for a new trial.

2. See the interesting discussion of what evidence will overcome or eliminate an inference, as a matter of law, in Leonard v. Watsonville Community Hospital, 1956, 47 Cal.2d 509, 515, 305 P.2d 36, 39. That was a civil case. In a criminal case where the government has a heavier burden of proof, the standard as to what evidence will overcome an inference favorable to the government should be more liberal than in a civil case. Compare Lawrence v. United States, 9 Cir., 1968, 400 F.2d 624.