**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James DAVIS, Defendant-Appellant.**

**No. 18415.**

United States Court of Appeals, Seventh Circuit.

Jan. 27, 1971.

William L. Hatch, Champaign, Ill., for appellant.

Frank J. Violanti, U. S. Atty., Gregory M. Wilson, Asst. U. S. Atty., Springfield, Ill., for appellee.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and STEVENS, Circuit Judge.

STEVENS, Circuit Judge.

Appellant was convicted of interstate transportation of a stolen vehicle. He contends that the evidence was insufficient to prove a violation of the statute, 18 U.S.C. § 2312; that his statement to an F.B.I. agent was erroneously admitted; and that the prosecution improperly commented on his failure to take the stand.[1] The record does not support these contentions.

I.

The owner of a 1962 Chevrolet left his car in a parking lot in St. Louis, Missouri, at about 8:00 o'clock A.M. on March 6, 1969. Except his wife, no one else was authorized to drive the car. Appellant was arrested about six hours later while driving the car in Madison, Illinois.[2] The next morning in response

---

1. Appellant also contends that the jury should have been given a copy of the written instructions, and should not have received the indictment. These contentions are foreclosed by United States v. Cobb, 397 F.2d 416, 419 (7th Cir. 1968), cert. denied 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260 and United States v. Hof-

fa, 367 F.2d 698, 712–713 (7th Cir. 1966).

2. The record makes it perfectly clear that appellant was the driver of the car, although he was accompanied by a 14-year old girl at the time of his arrest.

**930**

to questioning by an F.B.I. agent, appellent acknowledged that he had been in the car when it crossed the state line, and that he knew the car was stolen. These facts are sufficient to prove him guilty of interstate transportation of a stolen vehicle.[3]

■■■ Appellant's challenge to the sufficiency of the evidence is predicated on a portion of his statement to the F. B.I. agent. He told the agent that he was merely a passenger when the car crossed the state line; and that before entering the car he did not know that it had been stolen. Nevertheless, by offering the statement into evidence the prosecutor did not vouch for the accuracy of the entire document. Epps v. United States, 81 U.S.App.D.C. 244, 157 F.2d 11, 12 (1946); United States v. Cindrich, 140 F.Supp. 356, 359, 360 (W.D. Pa.1956) affirmed 241 F.2d 54 (3rd Cir. 1957). Considering the evidence as a whole, the jury was free to discredit the exculpatory portion of the statement.[4] Accordingly, unlike the cases on which appellant relies, we are not faced with the problem of differentiating between an innocent passenger and an active par-

ticipant in an interstate journey. See Lawrence v. United States, 400 F.2d 624 (9th Cir. 1968); Baker v. United States, 395 F.2d 368 (8th Cir. 1968). The guilty verdict was adequately supported by the evidence.

## II.

Appellant's claim that his statement was coerced is predicated on the fact that he had been in custody for almost 22 hours before he was interviewed by the F.B.I. agent. Relying on the Mc-Nabb-Mallory doctrine [5] as embodied in Rule 5(a) of the Federal Rules of Criminal Procedure, he contends that he should have been taken before a commissioner or other judicial officer before he was questioned by the agent. A review of what actually happened, as disclosed by the record, demonstrates that appellent's rights were fairly protected.

The arrest in the early afternoon of March 6 was by local police on a state charge.[6] The following day he was committed to the Vandalia State Penal Farm for a period of six months.[7] On that morning, the desk sergeant at the Madison police station telephoned the

---

3. Proof of possession of a recently stolen out-of-state vehicle raises a presumption of guilt. E. g., United States v. Bennett, 356 F.2d 500, 502 (7th Cir. 1966); United States v. Angel, 201 F.2d 531, 533 (7th Cir. 1953); United States v. Johnson, 412 F.2d 787, 788 (6th Cir. 1969) cert. denied 396 U.S. 993, 90 S.Ct. 489, 24 L.Ed.2d 456.

4. Although not cited by appellant, we recognize that Rodgers v. United States, 402 F.2d 830 (9th Cir. 1968) holds that a portion of the prosecution's case may undermine the presumption that would otherwise flow from proof of possession. However, the holding of that case is expressly limited to its facts, 402 F.2d at 834, and we find those facts distinguishable. Cf., United States v. Wolosyn, 411 F.2d 550 (9th Cir. 1969). Here the inculpatory portion of appellant's statement buttressed the presumption of guilt arising from independent proof of his possession shortly after the vehicle was stolen. The jury was free to disregard the exculpatory portion of his

statement as self-serving. In Rodgers there was no evidence to buttress the presumption arising from possession; in fact, the independent witness whose testimony proved possession also provided an explanation for possession which was as consistent with innocence as with guilt.

5. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

6. A bank teller in Madison had called the police to report appellant's unsuccessful attempt to cash a money order using the name "Earl Green." He was identified and apprehended as a result of that report.

7. The state proceedings which resulted in that commitment are not described in the record, but it is reasonable to assume that a state judicial officer participated. See People v. Price, 24 Ill.App.2d 364, 376–378, 164 N.E.2d 528 (2nd Dist. 1960).

F.B.I. to report that appellant had been arrested in possession of a stolen car.[8] The F.B.I. agent arranged to interview appellant at the Madison police station before he was removed to Vandalia. He was not then in federal custody; he was not arrested for the federal offense until six months later when he was discharged from state custody.

After his indictment in September, appointed counsel moved to suppress the statement. Appellant acknowledged that he had executed a written waiver of rights, but testified that he was under the influence of drugs at the time. This testimony was somewhat inconsistent with the fact that he had been in state custody for about 22 hours before his interview. Moreover, appellant acknowledged that two weeks later, while he was at Vandalia, he had voluntarily written a letter to the F.B.I. in which he asked for a "break" and reconfirmed a portion of his statement. That letter contained no reference to any unfair treatment or to any drugs. In the circumstances, the trial judge was entitled to accept the F.B.I. agent's testimony and to find that appellant's statement and waiver of rights were voluntary.

Unlike the position taken in the trial court at the hearing on the motion to suppress, appellant now argues that the statement was inadmissible as a matter of law because he had been in custody for about 22 hours without having been taken before a judicial officer before he was interviewed. As this argument was not advanced below, the record does not tell us what advice, if any, appellant may have received from a state judicial officer. But even if he received none, it was permissible for the F.B.I. agent to question him while he was in state custody. Since he was adequately advised of his rights, and there is no reason to find that the interview was conducted under coercive circumstances, it was not error to receive the statement in evidence.

Rule 5(a) prescribes the procedure to be followed when a suspect is taken into federal custody.[9] Appellant was not arrested on the federal offense until six months after he made his statement; he was then taken before a commissioner "without unnecessary delay," as required by the rule. Nor is there any basis in this record for regarding appellant's state custody as merely "nominal" or the result of the kind of "working arrangement" between state and federal officers which gave rise to Anderson v. United States, 318 U.S. 350, 352, 355–356, 63 S.Ct. 599, 87 L.Ed. 829. *Cf.,* United States v. Broadhead, 413 F.2d 1351, 1358–1359 (7th Cir. 1969).[10]

Finally, there is no evidence that the questioning itself was unreasonably prolonged or persistent. It was not merely a continuation of prior interrogation by local police officers, *cf.,* Westover v. United States, 384 U.S. 436, 494–497, 86 S.Ct. 1602, 16 L.Ed.2d 694, and there is no evidence that the questioning was conducted improperly or under coercive conditions. In our opinion the mere fact that appellant had been in state custody for about 22 hours does not require exclusion of his statement.

---

8. The owner of the car had not reported the theft until after work late in the afternoon of March 6.

9. Rule 5(a) provides:
   "An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith." Fed.R.Crim.P. 5(a).

10. Appellant urges that 18 U.S.C. § 3501, 82 Stat. 210, enacted as a part of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 197 *et seq.,* was not intended to qualify the holdings in *McNabb* and *Mallory.* Since these cases do not require exclusion of appellant's statement, we may assume, without deciding, that appellant's construction of the statute is correct.

### III.

Appellant contends that the prosecutor committed "plain error" by commenting on his failure to testify.[11] The specific comment challenged by appellant was included in the rebuttal argument. It should be read in context.

In the prosecutor's principal closing argument he emphasized the inference of guilt that resulted from possession of a recently stolen vehicle "unless such possession is explained or accounted for on the date in question in some way consistent with innocence."[12] In response, appellant's counsel argued that the exculpatory portion of the statement given to the F.B.I. agent accounted for his possession of the car at the time of his arrest consistently with his innocence. Thereafter, in rebuttal, the prosecutor argued:

"As far as I'm concerned, we can throw the admission out, and the Government right off the bat has a pretty good case. In fact, we have a pat case as far as I'm concerned.

"We have the stolen car, and we have the interstate transportation, and we have the Defendant picked up in the car.

"And again by that instruction that I mentioned to you, again there has been no evidence to his innocence, and you can infer his guilt just from that alone."

A comment on defendant's failure to testify would violate the Fifth Amendment, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, as well as the statute, now 18 U.S.C. § 3481, modifying the common law rule that an accused could not testify in his own behalf, Wilson v. United States, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650. In those cases the prosecutor argued, in substance, that an innocent man would have taken the stand to deny or explain the evidence against him,[13] and that the failure to do so was itself proof of guilt.[14] No such argument was made in this case.

In order for the prosecutor to obtain the benefit of the presumption that arises from unexplained possession of a stolen vehicle, it is appropriate argument to point out that the possession has not been adequately explained, or, if

---

11. Rule 52(b) provides:
   "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.R.Crim.P. 52(b).

12. The court instructed the jury:
   "If the jury finds that the Defendant had possession of a recently stolen motor vehicle that had been transported across state lines, the jury may infer that Defendant is guilty, unless such possession is explained or accounted for on the date in question in some way consistent with innocence."

13. " 'He would know that. He would know how she got down the alley. He would know how the blood got on the bottom of the concrete steps. He would know how long he was with her in that box. He would know how her wig got off. He would know whether he beat her or mistreated her. He would know whether he walked away from that place cool as a cucumber when he saw Mr. Villasenor because he was conscious of his own guilt and wanted to get away from that damaged or injured woman.

" 'These things he has not seen fit to take the stand and deny or explain.

" 'And in the whole world, if anybody would know, this defendant would know.

" 'Essie Mae is dead, she can't tell you her side of the story. The defendant won't.' " Griffin v. California, 380 U.S. 609, 611, 85 S.Ct. 1229, 1231, 14 L.Ed. 2d 106.

14. "When the District Attorney, referring to the fact that the defendant did not ask to be a witness, said to the jury, 'I want to say to you, that if I am ever charged with crime, I will not stop by putting witnesses on the stand to testify to my good character, but I will go upon the stand and hold up my hand before high heaven and testify to my innocence of the crime,' he intimated to them as plainly as if he had said in so many words that it was a circumstance against the innocence of the defendant that he did not go on the stand and testify." Wilson v. United States, 149 U.S. 60, 66, 13 S.Ct. 765, 766, 37 L.Ed. 650.

no explanatory evidence has been offered, to point out that the government's case is uncontradicted. That is the nature of the prosecutor's rebuttal argument.

It did not ask the jury to infer guilt from his failure to testify. On the contrary, it asked the jury to draw inferences properly arising from the government's affirmative evidence. We are not unmindful that reference to the fact that the prosecution's affirmative case is uncontradicted may remind the jury that the defendant elected not to testify. But that election is almost certain to prejudice the defense no matter what else happens in the courtroom. The importance of minimizing that prejudice does not outweigh the necessity for preserving otherwise fair and accepted procedures. It is one thing to accord respect to an accused's constitutionally protected privilege to refuse to testify by forbidding prosecutorial comment on its exercise; it is quite another to contend, as appellant does here, that his assertion of the privilege has provided him with an affirmative benefit by depriving the prosecutor of the full value of a presumption that arises from unexplained evidence of guilt. We hold that the prosecutor's comment was proper.

The judgment is affirmed.