UNITED STATES of America,
Plaintiff-Appellee,

v.

Justin RONE, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Roy Dupont LITTLE,
Defendant-Appellant.

Nos. 77–3964, 77–3695.

United States Court of Appeals,
Ninth Circuit.

June 13, 1979.

Terry Amdur, Pasadena, Joe Reichman, Los Angeles, Cal., for defendant-appellant.

Ronald W. Rose, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before ELY and WALLACE, Circuit Judges, and FOLEY,* District Judge.

ROGER D. FOLEY, District Judge:

On July 26, 1977, the Grand Jury returned a six-count indictment charging appellants Rone and Little with:

COUNT I: Conspiracy to violate the Racketeer Influenced and Corrupt Organizations statute (RICO) (18 U.S.C. § 1962(d)).

COUNT II: A substantive RICO offense, including as the acts of racketeering three murders and two extortions (the same extortions alleged in Counts III and IV (18 U.S.C. § 1962(c)).

COUNT III: The extortion of Donald Brennan (18 U.S.C. § 894).

COUNT IV: The extortion of Kenneth Brader (18 U.S.C. § 894).

Rone alone was named in the last two counts of the indictment.

COUNT V: Possession of an unregistered firearm (18 U.S.C. § 5861(d)).

COUNT VI: Possession of a firearm which was not identified by a serial number (the same sawed-off shotgun involved in Count V) (18 U.S.C. § 5861(i)).

Following an eleven-day trial before Judge Takasugi, the jury returned its verdict, finding each defendant guilty of all charges against him. In addition, a special verdict form was returned as to Count II of the indictment, finding that the defendants has committed all three murders and the two extortions. The district court sentenced the defendants to the maximum terms. Rone received consecutive sentences

* Honorable Roger D. Foley, United States District Judge, District of Nevada, sitting by designation.

of twenty years each on Counts I through IV, and ten years on each of the two firearms violations, for a total of 100 years. Little received four consecutive sentences of twenty years each on Counts I through IV, for a total of 80 years.

## FACTUAL BACKGROUND

Rone and Little consorted together in a wide range of unlawful activity which included murder and extortion. A large part of the Government's case was established by the testimony of Donald Brennan, a Los Angeles area bookmaker who had extensive contacts with the defendants. Brennan introduced Rone to James Rosie in the spring of 1973. Rosie, Rone and Little apparently entered into a mutual association which ended in May or June of 1974 when Rone and Rosie had a disagreement over payoffs from a fraudulent insurance policy scheme. Rosie was last seen alive on July 31, 1974, in the company of an associate, Timothy Mallen.

Brennan and his wife testified that both Rone and Little bragged to them that they had used a sawed-off shotgun to blow off Rosie's head. The two men also told of administering an intentional lethal overdose of morphine to Mallen. Mallen's body was recovered and an autopsy revealed death was caused by an overdose of either morphine or heroin. Rosie's body was never found.

With Rosie out of the way, Rone began demanding that Brennan pay him any debts Brennan owed to Rosie. Rone also began intercepting Rosie's monthly Social Security check which was mailed to Brennan's California residence. These checks, issued in Alabama, were cashed by Rone and Little in California. Brennan made payments to Rone on the amounts he had owed to Rosie and continued borrowing money from Rone to cover expenses incurred by his bookmaking operation.

Having lent large amounts of money to Brennan, Rone apparently took great interest in the success of Brennan's operations, even to the point of collecting money owed to Brennan's book. One of those who owed Brennan for gambling losses was Kenneth Brader. Brader and his wife testified that Little, using the name of Jim Vito, came to their house to collect money, threatening on several occasions to break Brader's legs and throw him from a fourth floor balcony. Brader also testified that Little told him that Rone was his boss. Furthermore, on at least one occasion, Rone forced Brennan's stepdaughter to negotiate a check from Brader rather than have his name appear on the check as an endorser.

In another episode of bragging to Brennan, both Rone and Little admitted the kidnapping and contract execution of Kenneth Whetstone, who was in the steel business. The defendants stated that their payment for the murder was borrowed by Whetstone's competitor from the victim. Whetstone's body was found with a .38 caliber bullet wound. A .38 caliber pistol was found at Little's residence following his arrest.

The Rone-Little activities carried on into early 1977 with mounting pressure applied to Brennan to pay loans owed to Rone. After receiving threats on his life from both Rone and Little, Brennan went to the FBI. Equipped with recording devices provided by the FBI, Brennan was able to record several conversations with Rone which were admitted at trial. These tapes implicated Rone in the extortion of Brennan and also contained a reference to the murder of Rosie.

## ISSUES ON APPEAL

I. Whether the evidence established an enterprise as defined in 18 U.S.C. § 1961(4).

II. Whether Wharton's Rule prohibits conviction and consecutive sentences for the RICO substantive charge (Count II) and the RICO conspiracy charge (Count I).

III. Whether the district court erred in imposing consecutive sentences for the RICO substantive violation (Count II) and the two extortions (Counts III and IV).

IV. Whether the district court erred in imposing consecutive sentences for Rone's two firearm convictions (Counts V and VI).

V. Whether there was sufficient evidence to convict Rone for the extortion of Brader (Count IV).

VI. Whether the Court properly instructed the jury on the required interstate commerce effect of the enterprise.

## I: "ENTERPRISE" UNDER RICO

■ Title IX of the Organized Crime Control Act of 1970 concerns "Racketeer Influenced and Corrupt Organizations" (RICO). Section 1961 defines the terms used in the proscriptive portions of the statute. An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering activity" means any act constituting a violation of a variety of enumerated state or federal offenses. 18 U.S.C. § 1961(1). A "pattern of racketeering activity" is defined as at least two acts of such racketeering activity. 18 U.S.C. § 1961(5). Title IX seeks to bar the investment of racketeering moneys, the acquisition of property through a pattern of racketeering activity or unlawful debt collection, the conduct of an enterprise through a pattern of racketeering or unlawful debt collection, and any conspiracy to commit the above acts. 18 U.S.C. § 1962(a)–(d).

■ Defendants argue that their convictions under § 1962 cannot stand as the "enterprise" must be a legitimate business to bring it under the umbrella of the RICO statute. This contention is without merit. A reading of § 1962(c) and Title IX in its entirety indicates that *any* enterprise which is conducted through a pattern of racketeering activity falls within the statute.

In fashioning the statute, Congress promulgated a broad legislative scheme to encompass a variety of criminal activities, regardless of their direct effect on legitimate business. The words "legitimate" or "illegitimate" appear nowhere in Title IX, and nowhere does Congress evince an intent to make such a distinction. Section 1962(c) does not restrict "enterprise" to a legitimate one only because it uses the words *"any enterprise."* Further, § 1961(4) provides an all-encompassing definition of enterprise, including "any union or group of individuals associated in fact although not a legal entity." Broad and unrestricted use of the term "enterprise" appears throughout Title IX. Given the presence of the wholly unencumbered term "any enterprise" throughout the statute, we hold that its use in § 1962(c) manifests an intent to proscribe the conduct of specified activities through a pattern of racketeering activity, regardless of the type of enterprise involved. See *United States v. Elliott*, 571 F.2d 880 (5th Cir. 1978); *United States v. Altese*, 542 F.2d 104 (2d Cir. 1976); *United States v. Cappetto*, 502 F.2d 1351 (7th Cir. 1974).

The view that § 1962(c) reaches illicit enterprises is shared by the Second, Fifth and Seventh Circuits. In *Elliott*, supra, the Court noted that:

> "'Congress gave the term "enterprise" a very broad meaning'. On its face and in light of its legislative history, the Act clearly encompasses 'not only legitimate businesses but also enterprises which are from their inception organized for illicit purposes'. *United States v. McLaurin*, 557 F.2d 1064, 1073 (5th Cir. 1977). Similarly, we are persuaded that 'enterprise' includes an informal, de facto association such as that involved in this case. In defining 'enterprise', Congress made clear that the statute extended beyond conventional business organizations to reach *'any . . . group of individuals'* whose association, however loose or informal, furnishes a vehicle for the commission of two or more predicate crimes. The statute demands only that there be association 'in fact' when it cannot be implied in law."

571 F.2d at 897–98.

It is notable that Congress could have restricted the meaning of the Act by inserting a single word, but did not do so. *United States v. Altese*, 542 F.2d 104, 106 (2d Cir. 1976).

When no ambiguity is apparent on the face of a statute, an examination of legislative history is inappropriate. The proper function of legislative history is to solve, and not create, an ambiguity. *United States v. Blasius*, 397 F.2d 203, 205–06 (2d Cir. 1968). Notwithstanding the facial clarity of § 1962(c), an examination of the legislative history reveals nothing contrary to our position. It is true that a significant purpose of the legislation "was to address the problems of infiltration of legitimate business by persons connected with organized crime." S.Rep. 91–617, 91st Cong., 1st Sess. (1969), at 76–83. The recognition of this particular purpose hardly leads to the conclusion that § 1962 applies only in the case of an actual infiltration of a legitimate business. Rather, acceptance of the broad definition of "enterprise" used by Congress fully comports with the stated Congressional goal of arresting the infiltration of regular commerce by organized crime. By prohibiting the functioning of illegitimate enterprises, participants in them are denied the sources of income used to invest in legitimate businesses. When, as here, § 1962(c) is invoked against an illicit enterprise, the effect is to retard the infiltration of normal businesses in the first instance by denying racketeers the source of their investment funds. The prophylactic aims of Title IX are well served by such an application of the statute.

## II. WHARTON'S RULE

Defendants were convicted by Counts I and II of violations of 18 U.S.C. § 1962(c) and (d).[1] Defendants contend that Wharton's Rule precludes both convictions or, in the alternative, prohibits consecutive sentences for the two convictions.

Wharton's Rule stands as an exception to the general principle that a conspiracy and the substantive offense that is its goal do not merge. *Iannelli v. United States*, 420 U.S. 770, 781–82, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). The Rule states that an agreement between two people to commit a particular crime cannot be prosecuted as a conspiracy where the crime necessarily requires the participation of two persons for its commission. Id. at 773, 95 S.Ct. 1284. The classic Wharton's Rule offenses are adultery, incest, bigamy and dueling. The Rule has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary. Id. at 782, 95 S.Ct. 1284. In *Iannelli*, the Court discussed the Rule's effect upon convictions of 18 U.S.C. § 371 (conspiracy) and 18 U.S.C. § 1955 (illegal gambling):

"Wharton's Rule applies only to offenses that *require* concerted criminal activity, a plurality of criminal agents. In such cases, a closer relationship exists between the conspiracy and the substantive offense because *both* require collective criminal activity." 420 U.S. at 785, 95 S.Ct. at 1293. (emphasis provided)

This circuit has considered the applicability of Wharton's Rule to convictions for conspiracy (18 U.S.C. § 371) and for racketeering (18 U.S.C. § 1962(c)). *United States v. Ohlson*, 552 F.2d 1347 (9th Cir. 1977). In *Ohlson*, three narcotics officers were charged with accepting bribes from narcotics dealers in the San Francisco area. The enterprises in *Ohlson* were the State of California Bureau of Narcotic Enforcement and the Narcotic Bureau of the San Francisco Police Department.

In the case at bar, the enterprise consisted of *two* persons associated together to engage in *illegal* activity. These two persons were Rone and Little. Rone and Little were also the two persons who allegedly conspired together under Count I of the indictment. This case is therefore factually distinguishable from *Ohlson*, and the Wharton's Rule argument has initial appeal.

---

1. 18 U.S.C. § 1962 provides:

"(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."

However, the principles delineated in *Iannelli* and elaborated in detail by this circuit in *Ohlson* are nonetheless applicable and binding. In *Ohlson*, the Court stated:

"On its face, this case is not amenable to application of Wharton's Rule, which itself actually is a limited exception to the well-established principle that a conspiracy to commit a substantive offense and the substantive offense itself can constitute separate offenses. See *Iannelli v. U. S.*, 420 U.S. 770, 781-82, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *Pinkerton v. U. S.*, 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). By definition the Rule applies only if the substantive offense necessarily requires the participation of two persons . . . The plain language of 18 U.S.C. § 1962(c) sets it apart from these types of crimes and clearly imports that a violation may be committed by an individual acting alone. This fact in itself takes § 1962(c) out of the scope of Wharton's Rule."

552 F.2d at 1349.

■ The Rule is only an aid to statutory construction, rather than a controlling principle of law, and applies only in the absence of legislative intent to the contrary. Id. The *Ohlson* Court suggested that *even if the facts* posed a Wharton's Rule problem, it would still be necessary to determine whether Congress intended to maintain a distinction between conspiracy and the substantive offense of racketeering. The Court found ample evidence in the statute (namely, the inclusion of subsection (d)) that Congress intended separate offenses, and nothing in the legislative history to the contrary. Id. The Court went on to say that:

"[T]he applicability of Wharton's Rule depends not on the evidence offered at trial but rather on the statutory requirements of the substantive offense. . . . [T]he *Rule comes into play only if the substantive offense is defined so as to necessarily require the agreement of two persons.*"

Id. at 1349-50. (emphasis added)

Defendants urge that the Rule is applicable here because two "persons" are required to violate § 1962(c): the person associated with the enterprise, and the enterprise itself. Since it was the concerted action of Rone and Little that made the "enterprise," they contend that they are being punished twice for the same offense. This argument ignores the explicit holding of *Ohlson* that only one *person* is required for a violation of § 1962(c). In addition, that person must be associated with an enterprise, but the criminal activity proscribed in (c) is not the enterprise or the association, but the pattern of racketeering, which can be the act of one person. The enterprise is simply one of the jurisdictional elements of the statute. Rone and Little agreed to form and did form an enterprise as defined by the statute. The formation of the enterprise was a completed act. Albeit in the nature of a conspiracy, it occurred prior to, and is not the same conspiracy alleged in, Count I of the indictment. Once the enterprise was formed, either one or the other, acting alone, could have committed acts which would constitute a violation of § 1962(c). In addition, they could conspire together to commit acts which would violate (c) and thus be in violation of subsection (d).

■ Under § 1962(c), any two of the offenses enumerated in § 1961(1) constitute a pattern of racketeering. The Jury found these defendants guilty of three murders and two extortions. It is possible to frame the case as follows: Rone and Little formed an enterprise to commit various acts of extortion. In association with, and in the conduct of that enterprise, they conspired together to commit, and did commit, three murders, in violation of § 1962(c) and (d). There is nothing in Wharton's Rule which would prohibit the resultant convictions.

■ Defendants suggest that, at the least, the consecutive sentences imposed for Counts I and II should run concurrently. The Supreme Court, in *Iannelli*, addressed this issue:

"In expressing these conclusions we do not imply that the distinct nature of the crimes of conspiracy to violate and violation of § 1955 should prompt prosecutors

to seek separate convictions in every case, or judges necessarily to sentence in a manner that imposes an additional sanction for conspiracy to violate § 1955 and the consummation of that end. Those decisions fall within the sound discretion of each, and should be rendered in accordance with the facts and circumstances of a particular case. We conclude only that Congress intended to retain these traditional options. Neither Wharton's Rule nor the history and structure of the Organized Crime Control Act of 1970 persuade us to the contrary."

420 U.S. at 791, 95 S.Ct. at 1296–1297. The Statement of Findings and Purpose to the Act of 1970 specifically alludes to "new penal prohibitions," "enhanced sanctions," and "new remedies" to deal with the unlawful activities of those engaged in organized crime. 84 Stat. 922 (1970). The district court did not abuse its discretion in finding that this case was one in which the enhanced sanctions as provided by law were appropriate.

Rone and Little were lawfully charged, convicted and sentenced. Even though they received the maximum penalties on each of two interrelated counts, there is no inherent unfairness. The sentences were within the bounds of the law, for distinct crimes, albeit variations of the same criminal scheme. It is notable that under state law, the defendants could have received three consecutive life sentences for the three murders. We fail to see any indication that justice has not been properly served in this case.

## III. OVERLAP OF THE EXTORTION CHARGES AND THE RICO OFFENSE

Defendants claim that consecutive sentences were improper for the substantive RICO violations, § 1962(c) (Count II), and the two extortion offenses charged under 18 U.S.C. § 894 (Counts III and IV). They argue that they are being sentenced twice for committing the same acts.

The test for determining whether offenses are the "same" for double jeop-

ardy purposes is found in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932): The statutory offenses must be examined to ascertain "whether each provision requires proof of a fact which the other does not." The Government had to prove each element of the extortion charges in order to establish two of the RICO predicates. However, no additional proof of fact was required to convict for either § 894 count. If the RICO § 1962(c) charge was based solely on the two extortions, there might be problems under *Blockburger*. But the indictment charged, and the jury found, three murders in addition to the two acts of extortion. In order to establish a § 1962(c) violation, the prosecution need only prove "a pattern of racketeering activity," defined in § 1961(5) as "at least two acts of racketeering activity." Racketeering activity includes both murder and extortion. 18 U.S.C. § 1961(1). There is sufficient basis for the § 1962(c) conviction even if the two extortion offenses were stricken from the RICO charge.

There is nothing in the RICO statutory scheme which would suggest that Congress intended to preclude separate convictions or consecutive sentences for a RICO offense and the underlying or predicate crimes which make up the racketeering pattern. The racketeering statutes were designed primarily as an additional tool for the prevention of racketeering activity, which consists in part of the commission of a number of other crimes. The Government is not required to make an election between seeking a conviction under RICO, or prosecuting the predicate offenses only. Such a requirement would nullify the intent and effect of the RICO prohibitions. Indeed, one court has strongly implied that conviction on the substantive counts which form the basis of the RICO charge is necessary to uphold a RICO conviction. *United States v. Brown*, 583 F.2d 659, 669 (3d Cir. 1978). See also *United States v. Pray*, 452 F.Supp. 788, 801–02 (M.D.Pa.1978).

The same reasoning applies to the propriety of consecutive sentences for the § 1962(c) conviction and the § 894 convic-

572

tions. Congress clearly intended the Act to provide for new penal prohibitions and enhanced sanctions. If we were to accept appellants' theory that sentences imposed under RICO and those imposed for the predicate offenses may not run consecutively, then Congress' purpose would be thwarted. If the RICO sentence must run concurrently with a sentence for any predicate crime, there would be no "enhanced" penalties. A conviction under RICO would, in fact, grant immunity for the offenses charged in the "pattern of racketeering." With the maximum penalties for RICO violations much less than those that might be obtained for the series of predicate crimes (18 U.S.C. § 1963), the RICO statutes would be rarely used. The principles delineated in *United States v. Jeffers*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), are inapposite in that the statute involved therein, 18 U.S.C. § 848, reflects a comprehensive penalty structure, a structure not found in the Racketeering Act. Id. at 156, 97 S.Ct. 2207. Therefore, the respective convictions and sentences on Counts II, III and IV are affirmed.

## IV. THE FIREARM CONVICTIONS

Counts V and VI of the indictment charged that defendant Rone violated the National Firearms Act Amendments of 1968, 26 U.S.C. § 5861 (1970). Count V charged possession of an unregistered sawed-off shotgun in violation of § 5861(d). Count VI charged possession of the same shotgun which was not identified by a serial number as required by § 5861(i). The jury returned verdicts of guilty on both counts, and the Court sentenced Rone to terms of ten years on each count, to run consecutively. The evidence at trial showed that both Counts V and VI concerned possession of the same weapon on the same date.

■ This circuit has held that the National Firearms Act Amendments should not be construed to permit multiple punishments for the possession of a single firearm. In *United States v. Clements*, 471 F.2d 1253 (9th Cir. 1972), this Court held that while the Government may charge and convict on

multiple counts under § 5861, Congress did not intend to allow consecutive sentences to be imposed when the violations arose from one act. In *Clements*, the defendant violated § 5861(c), (d) and (f). This Court held that under 26 U.S.C. § 5871, ten years' imprisonment is the maximum sentence that may be imposed for "any" violation of the Act. Accord, *United States v. Kalama*, 549 F.2d 594 (9th Cir. 1976) (violations of (d) and (f)); *United States v. Jones*, 487 F.2d 676 (9th Cir. 1973) (violations of (d), (e) and (i)). In *Rollins v. United States*, 543 F.2d 574 (5th Cir. 1976), the Court dealt with an identical fact situation, and, citing *Clements*, held that it was error to impose consecutive sentences for two separate charges arising out of the possession of a single sawed-off shotgun, in violation of § 5861(d) and (i).

■ In accordance with the previous rulings of this Court, we find that the consecutive sentences imposed upon Rone for the firearms violations were improper. In lieu of remand for resentencing of Rone, this Court, aware of the district court's studied conclusion that maximum sentences should be imposed, orders that the sentence imposed as to Count V for violating 26 U.S.C. § 5861(d) and the sentence imposed as to Count VI for violating 26 U.S.C. § 5861(i) are affirmed. But the said sentences are hereby modified so that the sentence imposed as to Count VI is to run concurrently with, and not consecutively to, the sentence imposed as to Count V.

## V. SUFFICIENCY OF THE EVIDENCE AS TO RONE ON COUNT IV

■ Rone attacks the sufficiency of the evidence to convict him for the extortion of Brader (Count IV). Rone did not move for a judgment of acquittal based on insufficiency of the evidence, F.R.Cr.P. 29, nor did he move for a new trial on the same grounds under F.R.Cr.P. 33. Failure to make these motions following conclusion of all the evidence constitutes a waiver of the motions, thus making appellate review inappropriate unless "plain error" is present. *United States v. Larson*, 507 F.2d 385 (9th

Cir. 1974); *Rodgers v. United States*, 402 F.2d 830 (9th Cir. 1968). The evidence linking Rone to the Brader extortion consisted largely of Brader's recollections of conversations with the codefendant Little. Little told Brader that Rone was his boss. Other acts of extortion by Rone were admitted to show a common scheme or design. Recorded conversations between Rone and Brennan demonstrated a scheme to collect debts through threats of violence by Rone. Furthermore, Rone was reluctant to endorse a check from Brader. Viewing this evidence in a light most ·favorable to the verdict, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942),· Rone's participation in the Brader extortion is clear. The evidence is sufficient; no plain error is present. Consequently, the conviction of Rone on Count IV is affirmed.

## VI. INTERSTATE COMMERCE IN-. STRUCTION

▮ The trial court instruction that the activities of the enterprise must affect interstate or foreign commerce was correct. The defendants' proposed instruction was rejected by the district court in favor of an instruction that the requisite effect on interstate commerce would exist if the jury found either: (1) that the company operated by the murder victim Whetstone bought steel manufactured outside the state of California, (2) that defendants received and cashed Rosie's Social Security checks which were issued in Alabama, or (3) that the defendants engaged in the extortionate collection of debts. Defendants contend that the jury should have been instructed that they must find that at least two of the alleged acts of racketeering affected commerce.

▮ The statute requires that the activity of the *enterprise*, not each predicate act of racketeering, have an effect on interstate commerce. *United States v. Nerone*, 563 F.2d 836, 852–54 (7th Cir. 1977). The

statute refers to "any enterprise engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(c). The Government must ·show a nexus of the enterprise to interstate or foreign commerce, albeit minimal, to satisfy the requirement. See *Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); *United States v. Phillips*, 577 F.2d 495, 501 (9th Cir. 1978) (Hobbs Act violations); *United States v. Campanale*, 518 F.2d 352, 364 (9th Cir. 1975). The trial court's instruction was a correct statement of the law and we find no error therein.

Except as modified herein, the judgment of conviction is affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent from that portion of the majority opinion which upholds appellants' convictions under the Anti-Racketeering Statute, 18 U.S.C. § 1961 *et seq.* (1970) (hereinafter cited RICO).

As reprehensible as one should consider appellants' criminal activities to have been, I simply cannot conclude from my reading of the statute and its relevant legislative history that Congress intended RICO's broad proscriptions to encompass such an illicit association as the association of Rone and Little in this case. Such a conclusion, I realize, aligns me in opposition not only to my Brothers' interpretation of the term "enterprise," but also to the reported views of three other Courts of Appeals.[1] Nevertheless, I am constrained to side with Judge Van Graafeiland who, dissenting in *United States v. Altese*, 542 F.2d 104, 107–111 (2d Cir. 1976), *cert. denied*, 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750 (1977), wrote:

Because I believe that the majority's holding radically extends federal jurisdiction to virtually every criminal venture affecting interstate commerce, I must

1. *United States v. Elliott*, 571 F.2d 880, 897-98 (5th Cir. 1978), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1979); *United States v. Cappetto*, 502 F.2d 1351, 1358 (7th Cir. 1974), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1121,

43 L.Ed.2d 395 (1975); *United States v. Altese*, 542 F.2d 104, 106 (2d Cir. 1976), *cert. denied*, 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750 (1977).

dissent. Although such a large scale incursion by the federal government into matters traditionally of local concern may be constitutionally permissible, I do not believe that such a step should be taken in the absence of clear Congressional direction. With all due respect to my brothers, I am unable to find such a mandate in either the statutory language or the legislative history of Title IX of the Organized Crime Control Act of 1970, 84 Stat. 922, 941–948.

The majority places great reliance on the word "any" which precedes "enterprise" in 18 U.S.C. § 1962. The significance of this word escapes me. "Enterprise" is defined in 18 U.S.C. § 1961(4). If, in fact, that definition encompasses only legitimate business or organizations, placing the word "any" before the defined phrase in § 1962 should not expand its meaning.

\* \* \* \* \* \*

Even were I to agree with the majority's facial reading of the statute, I would, nevertheless, feel duty bound to examine the legislative history to ascertain Congressional intent. In expounding a statute, we must not be guided by a single sentence or word therein. Rather, we must look to the provisions of the whole law so that we may give effect to the legislative will. *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975). "It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). *Muniz v. Hoffman*, 422 U.S. 454, 469, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975).

A review of the legislative history of Title IX leaves no doubt that Congress never contemplated that "enterprise" as used in §§ 1961, 1962 would extend beyond legitimate businesses or organizations. *See* S.Rep.No.91–617, 91st Cong., 1st Sess. (1969); H.R.Rep.No.91–1549, 1970 U.S.Code Cong. & Admin.News, pp. 4007, 4032–4036; Comment, *Organized Crime and the Infiltration of Legitimate Business: Civil Remedies for "Criminal Activity"*, 124 U.Pa.L.Rev. 124, 204–206 (1975). There is nothing in the floor debates that would indicate that any member of Congress expected or desired the far reaching interpretation of Title IX postulated by the majority herein. 116 Cong.Rec. 585–586, 35,193–35,319 (1970) . . . .

\* \* \* \* \* \*

The end result of the majority's expansive interpretation of § 1962(c) is to accord the word "enterprise", intended by Congress to be synonymous with commercial business, parity with the term "conspiracy". Hereafter, the Government will justifiably feel free to utilize § 1962(c) to prosecute any unlawful venture engaging in, or the activities of which affect, interstate commerce where the participants therein committed any two acts of "racketeering activity".

*Id.* at 107–108. I fully subscribe to Judge Van Graafeiland's logical and perceptive analysis. *See also United States v. Moeller*, 402 F.Supp. 49, 58–59 (D.Conn.1975) (persons associated for illicit purpose of arson not a RICO "enterprise").[2]

As to Parts IV and V of the majority opinion, I concur.

---

**2.** In *Moeller*, District Judge Newman wrote as follows:

> If "enterprise" in section 1962(c) includes unlawful ventures, then the statute could be used to prosecute any unlawful activity that affected interstate commerce so long as the participants in the activity committed any two acts within the broad definition of rack-

eteering activity. Congress may have power to extend federal criminal jurisdiction that far into areas normally handled by the state, but it should take a clear indication of legislative intention before such sweeping purpose is attributed to it.

*United States v. Moeller*, 402 F.Supp. 49, 59 (D.Conn.1975).