**GROB, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 80–C–1115.

United States District Court, E.D. Wisconsin.

Aug. 30, 1984.

Houseman, Feind & Castner, Grafton, Wis., for plaintiff.

Jeffrey D. Snow, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant.

## DECISION AND ORDER

WARREN, District Judge.

### I. BACKGROUND

These proceedings began with a letter of April 18, 1979, from the Internal Revenue Service (IRS) to the plaintiff, indicating a needed adjustment to the tax liability of Grob, Inc. for fiscal year 1976, ending September 30, 1976, and fiscal year 1977, ending September 30, 1977. The taxpayer opposed the assessment, paid the same on April 28, 1980, and filed a claim for refund on May 22, 1980. Following denial of the claim by the Government, this action was commenced on December 10, 1980. Trial was held, and the taxpayer was awarded judgment on April 28, 1983, in the amount of $239,425 plus interest and costs. 565 F.Supp. 391.

Thereafter, on May 27, 1983, the plaintiff filed the present application, pursuant to the provisions of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) & (d)(2)(B), for $27,015.69 in fees and expenses beyond the interest and costs previously awarded. In the interim, the Government has withdrawn its·appeal of the Court's decision. The parties have briefed the pending motion, and the matter is now ready for decision.

### II. THE STATUTE

This new and relatively uninterpreted law represents an effort by Congress to permit redress by litigants who, in protecting their legal positions, are forced into administrative or judicial proceedings in which they face the considerable power and resources of the federal government. In these situations, where the litigant is within the protected class of citizens and has prevailed in its battle with the Government, Congress has decreed that the Government be held liable, over and above the usual costs and expenses, for attorneys fees and costs—unless, that·is, if the Government's action was substantially justified.

Section 2412(d)(1)(A) of Title 28 of the United States Code provides as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The statute is plainly a limited waiver of sovereign immunity, and, as such, its limitations and conditions must be strictly observed and exceptions are not to be implied. *Rhode Island Committee on Energy v. General Services Administration,* 561 F.2d 397, 405 (1st Cir.1977). It reflects the legislative intent that those exceptions to the so-called "American Rule" on attorneys fees, which have become implanted in our common and statutory law, be extended to apply to the Government as a litigant in those circumstances described in 28 U.S.C. § 2412(d)(1)(A). *Alspach v. District Director of Internal Revenue,* 527 F.Supp. 225, 227 (D.Md.1981). ·The law has a "sunset provision" and will expire by its own terms on October 1, 1984, unless renewed. It applies to both administrative and judicial proceedings.

The United States, although it does not take issue with the proposition that the plaintiff, Grob, Inc. is the "prevailing par-

ty," does contest the plaintiff's eligibility under the Act; specifically, the Government contends that it has met its burden of showing that the action of the IRS in this instance was "substantially justified."

## III. ELIGIBILITY

The dispute here focuses on the wording of the relevant statute. The Government contends that to qualify under the Act under the facts of a case such as this, a party must be a corporation whose net worth did not exceed $5,000,000 *and* which did not employ more than 500 employees at the time the civil action was filed. The plaintiff, on the other hand, argues that eligibility attaches if the corporation's net worth was under $5,000,000 *or* if it did not have more than 500 employees.

It is undisputed that when the suit was initiated on December 10, 1980, the plaintiff did *not* have 500 employees; indeed, it has never had an employment force that large. However, while the plaintiff claims a net worth of $4,873,651.61 at the time of filing (Plaintiff's Exhibit 15, p. 2), the Government alleges in its responsive brief that the plaintiff was worth $7,288,773 on September 30, 1981. Substantial portions of both parties' briefs deal with this difference and whether or not the fixed assets of the plaintiff should be carried at acquisition cost, depreciated cost, or replacement value in arriving at net worth. As a result of its interpretation of the statutory language described herein, the Court need not resolve these issues.

The question of whether the net worth and the work force qualification are to be applied conjunctively or disjunctively is best resolved by a clear reading of the statute involved, something other courts have previously undertaken. As Judge Marilyn H. Patel commented in *Hoopa Valley Tribe v. Watt*, 569 F.Supp. 943, 945–946 (N.D.Cal.1983):

> The court is aware that the comparable provision under the Equal Access' for [sic] Justice Act for award of fees and expenses in administrative as opposed to court proceedings defines "party" to ex-

clude both those associations and organizations whose net worth exceeds $5,000,000 *and* those who employ more than 500 employees, regardless of net worth. 5 U.S.C. § 504(b)(1)(B)(i), (ii). The legislative history of the Act indicates an intention to define "party" identically for both administrative and court proceedings. H.Conf.Rep. No. 96–1434, *reprinted in* 1980 U.S.Code Cong. & Admin. News 5003, 5011, 5015. Nevertheless, the plain language of the two provisions defining "party" is distinctly different. *The provision governing eligibility for fees in civil actions such as this one defines "party" by inclusion, listing three alternative methods of qualification in the disjunctive.* By contrast, the provision for fees in administrative proceedings defines party by exclusion, listing two conditions of disqualification in the conjunctive. Congress can speak clearly if it chooses. When the applicable statutory language is clear on its face, as here, it is not for the court to go beyond its terms to search out ambiguity in the legislative history absent rare and exceptional circumstances. *See, e.g., Rubin v. United States*, 449 U.S. 424, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) (citations omitted); *United States v. Rone*, 598 F.2d 564, 569 (9th Cir.1979). No such exceptional circumstances are present here (emphasis supplied in part).

█ Thus, 5 U.S.C. § 504 relating to adjudications by administrative agencies defines the term "party" so as to include only companies with net worths of $5,000,000 or less and 500 employees or less. At the same time, 28 U.S.C. § 2412, relating to court proceedings, defines the term "party" as a corporation with a net worth not exceeding $5,000,000 *or* one employing not more than 500 persons.

█ It is true that the legislative history lends some support to the proposition that the Congress *intended* to define "party" in the same way for both types of adjudication; yet that is not what it said, and the courts are ill-advised to breathe meaning into a legislative enactment that is

absolutely clear on its face. Accordingly, this Court finds Grob, Inc. to be an eligible party under 28 U.S.C. § 2412(d)(2)(B). *See also Knights of the Klu Klux Klan Realm of Louisiana v. East Baton Rouge Parish School Board*, 679 F.2d 64, 68, *rehearing denied*, 691 F.2d 502 (5th Cir.1982); *S & H Riggers & Erectors, Inc. v. Occupational Safety & Health Review Commission*, 672 F.2d 426, 427 fn. 1 (5th Cir.1982); *Citizens Bank, Valley Head, Alabama v. United States*, 558 F.Supp. 1301, 1302 (N.D.Ala. 1983).

## IV.  SUBSTANTIAL JUSTIFICATION

Having thus determined that the plaintiff is an eligible prevailing party, the Court is obliged to award it fees, expenses, and costs unless it finds that "the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Government argues both substantial justification and special circumstances.

### A.  SPECIAL CIRCUMSTANCES

In support of its position that special circumstances make an award here unjust, the Government quotes from the Congressional Committee Reports with respect to this provision:

> This "safety valve" helps to insure that the government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. It also gives the Court discretion to deny awards where equitable considerations dictate an award should not be made.

S.Rep. No. 96–253, 96th Cong., 1st Sess. at 7; H.R.Rep. No. 96–1418, 96th Cong., 2d Sess. at 11, U.S.Code Cong. & Admin.News 1980, pp. 4953, 4990. The Government contends that the very nature of this case necessitated certain substantive value judgments and that the plaintiff never provided "more than minimal cooperation to the IRS during the course of its audit" and, hence, cannot be heard to complain that the assessment was unreasonable.

■ The Court does not find this argument persuasive. The plaintiff did attempt to establish the basis for its projections of anticipated extraordinary needs. The very exhibits which the Government cites to sustain its charge of lack of cooperation— namely, Defendants' Exhibits C, E, & A— appear to the Court to memorialize the efforts of a taxpayer who simply thinks the Government is wrong in its assessment. Characterization of this disagreement as a "special circumstance" is misconceived, as is the argument that because a taxpayer does not afford the IRS an adequate opportunity to correct its mistake, the taxpayer should be disqualified from recouping the costs of establishing the validity of his or her position. Nor does this case, in the Court's view, represent an effort by the Government to establish a novel but credible point of law. In short, the Court finds no special circumstances here.

### B.  SUBSTANTIAL JUSTIFICATION

■ As to the major issue involved in this motion—namely, whether or not the "position of the United States was substantially justified" under § 2412(d)(1)(A)—several seminal principles warrant exposition. First, it is well established that the burden is on the Government to show that its action was "substantially justified." *Wolverton v. Schweiker*, 533 F.Supp. 420, 424– 425 (D.Idaho 1982). Second, there is apparently no disagreement that:

> [t]he test of whether or not a government action is substantially justified is essentially one of reasonableness. Where the government can show that its case had a reasonable basis both in law and fact, no award may be made.

S.Rep. No. 96–253, 96th Cong., 1st Sess. at 6; H.R.Rep. No. 96–1418, 96th Cong., 1st Sess. at 10, U.S.Code Cong. & Admin. News 1980, p. 4989. The "substantial justification" standard apparently was patterned after the language regarding discovery sanctions in Rule 37 of the Federal Rules of Civil Procedure. Specifically, Rule 37(a)(4) provides that reasonable ex-

penses, including attorneys fees, shall be awarded to the prevailing party on a motion for an order compelling discovery unless the court finds that the position of the losing party was "substantially justified." Premising its position on language in the Advisory Committee's Notes to Rule 37, the Government analogizes that under the Equal Access to Justice Act, fees should be awarded only where the Government has insisted in pursuing a case in which "no genuine dispute exists." This argument was advanced in *Nunes-Correia v. Haig,* 543 F.Supp. 812 (D.D.C.1982).

In that case, Judge William B. Bryant noted that the Advisory Committee, in discussing cases where "no genuine dispute" exists, referred to "frivolous requests for or objections to discovery." From this, Judge Bryant inferred that the "substantial justification" standard of Rule 37 may be satisfied more easily than the "substantial justification" standard under the Equal Access to Justice Act:

> The aspect of Rule 37 most stressed by the Act's legislative history is Rule 37's 1970 amendment encouraging wider use of expense awards and discouraging unnecessary recourse to the courts. *See* House Report at 18 (4997). *See also* 4A Moore's Federal Practice ¶ 37.02(10). The legislative history's emphasis upon Rule 37's 1970 amendment suggests that Congress did not wish to restrict fee awards under the Act to only a minute number of cases. Consequently courts applying the Rule 37 precedents to Equal Access to Justice Act cases *"should temper them with the clear indications in the Act's own legislative history that mere absence of bad faith or of deliberate abuse of the legal process is not enough to avoid an award of fees and expenses."*

*Nunes-Correia v. Haig,* 543 F.Supp. 812, 817 (D.D.C.1982) (emphasis supplied).

Both parties to this action also refer the Court to the learned analysis of the Act in *Spencer v. National Labor Relations Board,* 712 F.2d 539 (D.C.Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). That case involved a group of nonsupervisory engineers who sought attorneys' fees from the N.L.R.B. after prevailing in their efforts to obtain a separate representation election at the electric utility company where they worked. Although the district court denied fees, the circuit court seized the opportunity to analyze the historical development and practical application of the Equal Access to Justice Act, as follows:

First, the Act represents a conscious and experimental departure from the so-called "America Rule" that each litigant must pay its own lawyer. Historically, the doctrine had two exceptions—namely, the "bad faith" rule and the "common benefit" rule. Yet even these two exceptions could not be invoked against the Government because of sovereign immunity and because 28 U.S.C. § 2412, the general statute, had, prior to its amendment by the Equal Access to Justice Act, consistently been interpreted to preclude awards of fees against the Government absent some clear or express statutory provision in the law applicable to the particular case.

Although in recent years, the federal courts had begun to chip away at this tough "American" stance, such judicial innovation was halted by the United States Supreme Court's decision in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In that case, the Court stated unequivocally that only the Congress, and not the courts, can authorize an exception to the American Rule. The Equal Access to Justice Act appears to be one of several responses Congress made to the *Alyeska* holding.

In particular, 28 U.S.C. § 2412(b) codifies and applies to the Government the "bad faith" and "common benefit" exceptions to the American Rule. Yet, as the Court of Appeals for the District of Columbia notes in *Spencer,* the language of the section of the Act at issue here, 28 U.S.C. § 2412(d)(1)(A), is much broader. It provides that a court "shall" award an eligible prevailing party its attorneys' fees and ex-

penses unless some other statute provides otherwise or "the court finds that the position of the United States was substantially justified or that special circumstances made an award unjust." In *Spencer*, the D.C. Circuit also points out that the Senate Judiciary Committee considered and rejected an amendment that would have changed the phrase "substantially justified" to "reasonably justified". This historical fact tends to support the conclusion that for the Government to avoid fees and costs, its position must be stronger than that which would merely preclude a characterization of bad faith or prevent an imposition of fees and costs pursuant to Rule 37 of the Federal Rules of Civil Procedure.

If the purpose of the Act is to provide relief to victims of governmental abuse, reduce the incidence of Government error, and refine the administration of federal law, then a policy of granting only "miserly" awards under the Act would prove ineffective. Conversely, the achievement of these ends would necessitate that the Government explain its position by reference to past practices, reasoned legal analyses, or common sense notions about the prosecutions it undertakes.

█ In its discussion of the Act, the *Spencer* court ruminates at length over the two phrases in the Act that it describes as "distressingly ambiguous". These are "the position of the United States" and "substantially justified". Although there are instances where the position of the Government in the *underlying action* and its *litigation position* are distinct and different, this Court feels that in the present matter, the two positions of the United States were essentially identical. Turning then to an analysis of the Government's claimed "substantial justification," the Court will examine the present circumstances under the three factors suggested by *Spencer*. They are as follows:

    (1) the clarity of the governing law,

    (2) the foreseeable length and complexity of the litigation, and

    (3) the consistency of the government's position.

### 1. *Clarity of the governing law.*

This case involved essentially factual determinations. It did not represent an effort by the Government to establish a new but credible position on the law. To the extent that the defendant's brief on the Equal Access to Justice Act attempts to reargue the case, it is not helpful. The applicability of Sections 531 and 532 of the Code was never in question. Rather, the issues were (a) the intent of the taxpayer, and (b) whether or not the accumulations of earnings and profits exceeded the reasonable needs of the business. The methodology for assessing the reasonable needs of the business, as set forth in the "Bardahl Formula," was not at issue.

There was, however, an arguable issue on estimated tax payments. At the time of the Bardahl case, corporate payment of estimated taxes was not required. By the time the accumulated earnings assessment was made against Grob, Inc., corporations were required to pay current payments of estimated income taxes, and the characterization of these as anticipated operating expenses was recognized. Yet the Government, in its Bardahl calculations, did not add quarterly payments of estimated taxes as operating expenses for future years but instead made what appears to have been an allowance of an arbitrary amount, in anticipated extraordinary business needs. In justifying this approach, the Government quotes from an out-dated paragraph of the Bardahl decision, *see Defendant's Post-Trial Brief* at 22 & 23. The Court sees no justification for this.

In a similar vein, there seems to have been no reason for the Government to have taken the position that it did right up to trial—namely, that the "nest egg" securities that must be considered in arriving at Column 8 of the Bardahl calculation, "Investments in Unrelated Properties," should be valued at full market. By 1975, the Supreme Court in *Ivan Allen Co. v. United States*, 422 U.S. 617, 628, 95 S.Ct. 2501, 2507, 45 L.Ed.2d 435 (1975), had already established the propriety of deducting capi-

tal gains liability and costs of sale. The Government witness testified that he did not deduct commission costs and capital gains liability in evaluating these securities because he "had no basis for arriving at those numbers to do that." *Transcript* at 47. While this may be true, it also means that the Column 8 figure in the Government's Bardahl calculation was arbitrarily high.

### 2. *Foreseeable length and complexity of the litigation.*

It is self-evident that deliberation leading to a decision to assess an accumulated earnings and profit tax is going to be both lengthy and complex. The specialized needs of various industrial enterprises and the intricacies of the Internal Revenue Code virtually insure this. As the plaintiff points out, excess accumulated earnings is a penalty tax that has a considerable effect on the life of a target company. Either the IRS is correct and there exists a conscious effort to avoid income tax by the shareholders, or the IRS is wrong and any change in financial status will result in undercapitalization. It is a situation that permits of little negotiability in which a target taxpayer can easily be put in a "do-or-die" situation. Under such conditions, the Government should do its homework, secure its expert opinions, and know the applicable law before it subjects the taxpayer to a cruel and costly trial by combat of accountants. The Government failed to do this here, convincing the Court that it was not substantially justified in prosecuting this case.

### 3. *Consistency of the Government's position.*

In its discussion of this factor, the *Spencer* court comments on the legislative history on the enactment of the Equal Access to Justice Act, as follows:

One of the systemic sources of inequity advocates of the Act sought to eliminate was the ability of the government to use its superior resources to beat into submission the hapless victims of such deviations from customary practice.... In sum, a court reviewing an EAJA peti-

tion should demand that the government make a particularly strong showing of justification for its position when there is evidence that the petitioner was subjected to atypically harsh treatment.

*Spencer v. National Labor Relations Board,* 712 F.2d 539, 560 (D.C.Cir.1983).

This Court, in its judgment opinion of April 28, 1983, noted the shifting positions of the Government with respect to average versus peak inventory on the applicable turnover cycles, the 15 versus 30-day credit cycle calculation, the proper valuation of the "nest egg" of unrelated investments in determining assets available to meet extraordinary needs, and the appropriate treatment of estimated tax payments. All of these issues prompted certain inconsistencies in the Government's position.

Yet of even greater concern to this Court is the parties' dispute as to the plaintiff's intent. That Mr. Grob was unhappy about the Government's interest and involvement in his business is an understatement. He is an outspoken, independent, strong-willed octogenarian. At trial, the Government read into the record a portion of his deposition:

May I make a statement? When I said I was a tax slave, I'd like to qualify this to reflect I'm running the business not the way I would run it if it was in the tax department.

I make my decisions all relative to tax, relative to tax, and relative to tax all the time. I do not make my decision like we made years ago when we started our business when tax was a relatively small expense. That's what I mean when I am a tax slave.

To the Government, this demonstrates the plaintiff's intent to avoid income taxes. To the Court, it demonstrates frustration with an agency whose regulations intrude into nearly every managerial decision he makes and that punishes him for his unorthodox business views by assessing him a penalty tax based on what he views as unrealistic projections. To be opinionated, conservative, and not afraid to speak out is not illegal. Nor does it, by itself, justify Governmental action.

## V. ANTICIPATED EXTRAORDINARY EXPENSES

The Court has discussed several of the aspects of this case within the context of the criteria set forth in *Spencer v. National Labor Relations Board,* 712 F.2d 539 (D.C.Cir.1983). However, the most dramatic aspect is exhibited by the conflicting postures of the parties as to the components of anticipated extraordinary needs. In calculating its needs for machinery replacement, self-insurance for products liability, and self-insurance-casualty, the plaintiff necessarily looked forward in the light of its knowledge at the time. The Government had to do likewise in making its allowances.

Yet the plaintiff made its estimate based on years of experience; the Government's witness, on the other hand, was not particularly knowledgeable in the machine tool business and had no experience dealing with self-insured businesses. Nor had the Government obtained the services of any expert in arriving at its positions in these and other relevant projections. Machinery replacement reserves were merely projected on the basis of what Grob, Inc. had purchased in fiscal years 1976 and 1977. The Court adequately discussed its observations regarding Government Exhibits E & P and, in particular, its concern over the lack of basis for the Government's figures in its memorandum decision of April 28, 1983.

In its brief in opposition to the present motion, the Government notes that it never suggested that a reasonable products liability reserve could be arrived at by multiplying a reasonable annual premium by a factor of ten and confesses to being "befuddled" by the Court's calculation. In response, the Court reaffirms its belief that the amount of one annual premium is not a realistic reserve to self-insure against a products liability claim. The Government suggested multiplying the annual premium by ten to arrive at the reserve for a casualty loss; the Court felt that such an approach would be equally applicable with regard to a products liability reserve, since

the incidence of such claims in a machine tool factory is likely to be high.

There may well be, as the Government contends, "murky" waters as one seeks to project reasonable needs for machinery replacement, casualty and liability losses, estimated tax payments, key man replacement, plant expansion, and new product development. Yet if the Government, to prevent income tax avoidance, routinely substitutes its judgment on legitimate future business needs for that of the taxpayer, it is well-advised to be in a position to justify its projections with clarity. Otherwise, it becomes a part of the very problem to which the Equal Access to Justice Act was intended to remedy.

Based upon its belief that the Government's position in this matter was not substantially justified and that no "special circumstances" exist which would make it unjust for the plaintiff to be awarded its costs of defending this action, the Court concludes that Grob, Inc. should be awarded the sum of $27,015.69. The Clerk of Court shall enter judgment accordingly.