**UNITED STATES of America**

**v.**

**WALI, Abdul, Appellant.**

No. 88–5024.

United States Court of Appeals,
Third Circuit.

Argued July 27, 1988.

Decided Nov. 3, 1988.

Rehearing Denied Jan. 18, 1989.

Alan L. Zegas (argued), West Orange, N.J., Joseph E. Govlick, Montclair, N.J., for appellant.

Edna Ball Axelrod (argued), Chief, Appeals Div., U.S. Atty's Office, Newark, N.J., for appellee.

Before HIGGINBOTHAM, BECKER, and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Appellant appeals his conviction on conspiracy to import Schedule I controlled substances in violation of 21 U.S.C. §§ 846, 963 (1982). At trial the district court denied defendant's motion to admit into evidence exculpatory statements of an alleged co-conspirator for purposes of impeachment under Fed.R.Evid. 806. Because we find that the district court's denial constituted reversible error, we will vacate the judgment of conviction, sentence and fine imposed.

## I

In 1984, the Drug Enforcement Administration (DEA) learned that a major drug trafficking organization, believed to be directed by Stanley Karl Esser of the Netherlands, was seeking to distribute heroin and hashish in the United States. This information prompted a joint investigation by the DEA and Dutch authorities into Esser's activities.

DEA undercover agent Jack Short was selected to pose as an American cocaine dealer interested in doing business with Esser. In discussions between Esser and Short concerning the importation of narcotics, Esser mentioned that a person named "Hadji" would be able to supply the drugs. Afterwards, as determined from a wiretap, Esser contacted Hadji to discuss the deal that was being formulated. The government, using those remarks that Esser, an unavailable witness, had made to Short, and the recorded telephone conversations, prosecuted Appellant, Abdul Wali, asserting that he was Hadji.

At Wali's trial, Short testified that Esser told him that Esser could "pick up the heroin from Hadji's people in Paki-stan...." Transcript of the Trial of United States v. Wali, reprinted in Appellant's App. at A821. Esser also mentioned to Short that "Hadji was very big in the [drug] business in the United States" and that "Hadji might want his people in the States to deliver the heroin...." Id. at A822–23. Moreover, Short testified that Esser said that his arrangement with Hadji was to transport 10 tons of hashish to the Netherlands and then send it in containers, two tons at a time, to the United States every two weeks. Id. at A826. When Wali's counsel objected on hearsay grounds to the admission of Short's testimony regarding Esser's statements, the government countered by claiming these statements were "co-conspirator exceptions" and the district court overruled the objection. Id. at A845–47.

Wali then sought to introduce statements that Esser had made to Dutch authorities exonerating Wali for the purpose of impeaching Esser's credibility. Esser had told Dutch police that "[a]s far as I know, Wali does not traffick in drugs. I never did anything for him, nor did he for me." Id. at A1413. When asked whether Wali played a part in his buying and selling of hashish, Esser responded: "None at all." Id. at A1426. Moreover, Esser gave the following answers in response to questions from a DEA agent:

Q: Had you received the heroin sample from Hadji alias Abdul Wali?

A: No.

Q: Did Hadji, Abdul Wali[,] ever deliver has[h] to you?

A: No.

Q: Did he ever say to you that he would be able to deliver hash?

A: No.

Q: Did Hadji, Abdul Wali[,] say to you that he would be able to deliver heroin?

A: No.

Q: Did you ever ask Hadji, Abdul Wali[,] if he could ever deliver hash or heroin?

A: When I first met Hadji, Abdul Wali, I asked him if he could deliver hash, whether he knew people who could supply me with it. Hadji Abdul Wali said that he did not want to talk about that

and that he had nothing to do with hash. I never spoke about heroin with Abdul Wali.

*Id.* at A1443.

Wali first attempted to admit Esser's exculpatory statements when Short, on re-direct examination, referred to a statement that Esser made to Dutch authorities about $600,000 that was owed to him for a hash-ish shipment to the United States. Upon hearing Short's testimony, counsel for Wali stated that Wali had the right to bring out the rest of what Esser told Dutch authori-ties. The district court *sua sponte* struck this reference to Esser's prior statements to Dutch authorities and barred Wali from introducing the complete statements. *Id.* at A1219, A1229–30.

Counsel for Wali later sought to have Esser's exculpatory statements affirma-tively admitted into evidence for purposes of impeachment and supplied the district court with a brief on this issue. The government did not submit any papers in opposition, but orally objected to admitting Esser's exculpatory statements on grounds that Wali opted not to take Esser's deposi-tion prior to trial, and thus was barred from admitting statements that were not subject to cross-examination. *Id.* at A1485–86. The district court accepted the government's argument and refused to ad-mit Esser's exculpatory statements, ruling that Esser had been "available" to Wali through the deposition process. *Id.* at A1488–91.

## II

Wali asserts that "exculpatory state-ments of Esser that were not admitted were crucial to defendant's case because Esser's other statements, which were ex-tensively relied upon by the government in order to prove the existence of a conspir-acy, were inconsistent with Esser's excul-patory statements." Appellant's Brief at 13. Because the government used co-con-spirator statements of Esser against him, as permitted under Fed.R.Evid. 801(d)(2)(E), Wali claims the right to have Esser's exculpatory declarations used for purposes of impeachment pursuant to Fed. R.Evid. 806, which, in part, provides:

When a hearsay statement, or a state-ment defined in Rule 801(d)(2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be at-tacked, and if attacked may ·be sup-ported, by any evidence which would be admissible for those purposes if declar-ant had testified as a witness. Evidence of a statement or conduct by the declar-ant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the de-clarant may have been afforded an op-portunity to deny or explain.

The Notes of the Advisory Committee explain the rationale behind Rule 806:

The declarant of a hearsay statement which is admitted into evidence is in ef-fect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testi-fied.

The government admits that Rule 806 permits Wali to impeach the credibility of a co-conspirator, but presents two arguments against admitting the exculpatory state-ments. First, the government argues that Wali's decision not to depose Esser before trial was clearly strategic since Esser's ex-culpatory statements at a deposition would have been subject to cross-examination. Secondly, the government contends, for the first time, that none of Esser's declarations that exculpate Wali are inconsistent with his co-conspirator statements. We reject both of these arguments.

## III

■ The government argues that Wali had been given the opportunity to obtain and present at trial the deposition testimo-ny of Esser, and that "[t]his opportunity fully satisfied his constitutional right to present a defense." Appellee's Brief at 21. The government cites *Ray v. United States*, 367 F.2d 258 (8th Cir.1966), *cert. denied*, 386 U.S. 913, 87 S.Ct. 863, 17 L.Ed. 2d 785 (1967), as authority for the proposi-tion that "[a] defendant who fails to take advantage of the deposition procedure can-

not complain of any disadvantage from failure of the witness to appear at trial." Appellee's Brief at 21. Consequently, the government asserts that "[t]he defendant's decision to forego the deposition and attempt to introduce the unexamined statements at trial does not entitle him to a new trial." *Id.* at 22.

However, the crux of the issue in this case is not whether a defendant, as in *Ray*, had available to him a means of deposing or subpoenaing witnesses that he failed to utilize, but whether when the government has used statements of an alleged co-conspirator, can a defendant admit exculpatory statements of that alleged co-conspirator for the purposes of impeachment under Rule 806. As stated in Rule 806, there is no requirement that the hearsay declarant,[1] whose inconsistent statements are used against him for purposes of impeachment, have been afforded an opportunity to deny or explain these statements. Therefore, Esser's statements that exculpated Wali, if inconsistent with his co-conspirator statements that inculpated Wali, can be admitted pursuant to Rule 806 without any need for cross-examination and regardless of whether Esser could have been deposed.[2]

■ Having found that there was no need to depose Esser, we must now consider the *government's* second contention that Esser's statements exculpating Wali are not inconsistent with his co-conspirator statements used to inculpate Wali. This argument is based on the fact that "Esser never stated that Abdul Wali was either the source of his narcotics or the 'Hadji' who supplied him." *Id.* at 28. Instead, the government asserts that Wali's identity was established circumstantially and through an identification of his voice from recorded conversations.

As examples of circumstantial evidence, the government asserts that Esser's attorney, Martien Roeffen, "told Short that Esser's drug supplier had a house in Malibu" and that "[o]ther evidence established Wali's ownership of a house in Malibu." *Id.* "Likewise, Roeffen told Short that the supplier's son was kidnapped" and "[t]he kidnapping of Wali's son was discussed in other conversations between Esser and Wali." *Id.* at 29. "In addition, Roeffen specifically told ... Short that the supplier 'Hadji' was Abdul Wali." *Id.*

We agree with the government that where inconsistency is not demonstrated, impeachment evidence is properly rejected. *United States v. Hale*, 422 U.S. 171, 176, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99 (1975). We find unpersuasive, however, the government's argument that the statements at issue in this case were not inconsistent. Even though Esser never stated that Wali was the "Hadji" who supplied him with narcotics, the government used his co-conspirator statements to show that they were made in furtherance of a conspiracy to import drugs, thereby inculpating Wali. Thus, Esser's statements to Dutch authorities that exculpated Wali were inconsistent. *Cf. United States v. Agajanian*, 852 F.2d 56, 58–59 (2d Cir. 1988) (transcript of taped telephone conversation involving witness was sufficiently inconsistent with trial testimony of witness to be admissible for impeachment purposes); *United States v. Dennis*, 625 F.2d 782, 796 (8th Cir.1980) (witness's denials of and inability to recall grand jury testimony were inconsistent with his trial testimony).

## IV. CONCLUSION

■ Given that the erroneously excluded evidence were statements that directly impeached the credibility of Esser, whose dec-

---

1. Technically, Rule 801(d)(2)(E) qualifies statements of a co-conspirator as admissions of a party opponent, and thus such statements are not hearsay. However, Rule 806 subjects the declarant of such statements, like the declarant of hearsay statements, to attacks on his credibility. *See* Fed.R.Evid. 806, Notes of Committee on the Judiciary, Senate Report No. 93–1277.

2. In addition, Fed.R.Evid. 613(b), which establishes that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon ...," specifically states that its "provision does not apply to admissions of a party-opponent as defined in [R]ule 801(d)(2)."

larations were one of the chief sources of evidence used to implicate Wali in the conspiracy to import narcotics, we cannot say that the district court's error was harmless to Wali. Accordingly, we will vacate the judgment of conviction, sentence and fine imposed.[3]

---

3. Wali raises numerous other issues on this appeal, among them that the district court violated his right to due process by conducting *in camera* review of documents in the presence of government agents. However, because of our holding that Wali's conviction on the charged count was tainted by the district court's error, we do not find it necessary to address Wali's other contentions. We note also that the government is, of course, entitled to retry Wali at its discretion, since our vacatur of his conviction did not result from a finding of insufficient evidence. *See Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 305–06, 104 S.Ct. 1805, 1811–12, 80 L.Ed.2d 311 (1984) (retrial is permissible after reversal for trial error, though not for evidentiary insufficiency); *United States v. Beros,* 833 F.2d 455, 467 n. 13 (3rd Cir.1987) (retrial is permissible after reversal for trial error, though not for evidentiary insufficiency).