**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Leroy BURTON and Tyrone Burton,
Defendants–Appellants.**

**Nos. 90–1972, 90–2263.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1991.

Decided July 12, 1991.

Stephen P. Sinnott, Patricia B. Holmes, Asst. U.S. Attys., Crim.Div., Barry R. Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Luis M. Galvan, Office of the Federal Public Defender, E. Duke McNeil, Chicago, Ill., for Leroy Burton.

Luis M. Galvan, Candice Green, Office of the Federal Public Defender, Chicago, Ill., for Tyrone Burton.

Before CUMMINGS, RIPPLE and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

In February 1990 a jury convicted defendants Leroy Burton and Tyrone Burton on charges arising out of their participation in an interstate scheme to steal and resell tires and trucks. Leroy allegedly had hired his brother Tyrone and others to steal tires from warehouses in Michigan, Missouri and Indiana. Participants in the tire theft ring located promising sites, drove to them, loaded trucks found at the sites with stolen tires and drove the stolen trucks back to Chicago. The stolen tires were delivered to a warehouse called Hub Cap City in Riverdale, Illinois, and the stolen trucks were then abandoned. The ring was active from October 1986 to May 1988.

In early 1987 the Federal Bureau of Investigation and the Illinois State Police began investigating Leroy Burton after receiving information about the group's activities. They obtained the cooperation of Gabriel Johnson, Ernest Murphy and John Willis, each of whom had previously done business with Leroy Burton. In July 1987 the FBI began taping conversations between members of the conspiracy with the help of Willis and Murphy. FBI Special Agent Charles Pearson supervised the taping, and a total of seven recordings were made. On most of the tapes, Leroy Burton spoke with either Murphy or Willis about the group's *modus operandi* and places from which they had stolen or were planning to steal. On one occasion, on February 25, 1988, Agent Pearson planned to record a meeting between Willis and Leroy Burton but Tyrone Burton showed up instead. Pearson taped the resulting conversation between Willis and Tyrone. On the tape, Tyrone discusses his participation in two thefts from a tire shop in Cape Girardeau, Missouri.

The FBI and the Illinois State Police arrested the key members of the ring in May 1988 after luring the suspects into a trap. The authorities planted tires and a Ryder truck at a warehouse in Hammond, Indiana. They dispatched Willis to tell Leroy Burton about the opportunity for a theft. On May 8, 1988, Leroy Burton, John Willis, Brennan Briggs and John Briggs met at Hub Cap City and travelled to Hammond. They were recorded on audiotape while *en route* to Hammond. In Hammond, the Briggs brothers and Willis were videotaped breaking into the warehouse and stealing tires. Leroy did not take part in the actual break-in. The FBI and Illinois State Police also followed the stolen Ryder truck as the four transported it back to Illinois. The FBI arrested them in Illinois. Tyrone Burton was arrested three months later.

Leroy Burton, Tyrone Burton and Brennan Briggs were tried.[1] Each was charged with conspiring to transport stolen goods, merchandise and motor vehicles in inter-

state commerce in violation of 18 U.S.C. § 371. Leroy was charged with three additional counts of transporting stolen vehicles in violation of 18 U.S.C. §§ 2 and 2312 and two counts of transporting stolen goods in violation of 18 U.S.C. § 2314. Tyrone was charged in one additional count with transporting a stolen truck in violation of 18 U.S.C. §§ 2 and 2312. The jury found all three guilty on all counts after a week-long trial. The evidence consisted primarily of the seven audiotape recordings made during the investigation and the videotape made in Hammond. Leroy presented no evidence in his defense and Tyrone rested after presenting one stipulation.

Leroy and Tyrone each claim that the district court violated their rights under the Sixth Amendment and the Federal Rules of Evidence to confront a witness against them. Willis' statements on the FBI tapes had been admitted into evidence in their entirety without any instruction limiting their use by the jury. Defendants had asked to impeach Willis, who had not testified in person, by questioning Agent Pearson about Willis' prior criminal convictions. The district court had denied the request. Tyrone also appeals his conviction on the grounds that the evidence was insufficient to convict him either of participating in the conspiracy or of transporting a stolen motor vehicle. For the reasons that follow, we affirm.

## ANALYSIS

*Confrontation Clause and Federal Rule of Evidence 806*

Leroy and Tyrone argue that they should have had an opportunity to impeach Willis by inquiring about his prior convictions. Willis agreed to cooperate with the government in January 1988 after Agent Pearson travelled to Davenport, Iowa, to speak to him. At the time of their meeting, Willis was being held on a state charge that he had stolen a motor vehicle. Willis subsequently helped the FBI tape five of the seven conversations that were admitted into evidence against the Burtons. Willis

---

1. John Briggs was a minor and was not charged.

did not testify at the Burtons' trial, but the tapes which included Willis' statements were admitted in their entirety.

The Burtons believe that the district court transgressed both the Confrontation Clause of the Constitution and Federal Rule of Evidence 806 by disallowing Willis' impeachment. They feel that the Confrontation Clause [2] gave them the right to confront Willis, whom they characterize as a witness against them. They also contend that the court should have allowed the impeachment of Willis' credibility under Fed. R.Evid. 806, which permits a party to attack the credibility of a hearsay declarant "by any evidence which would be admissible for those purposes if declarant had testified as a witness." Fed.R.Evid. 806.

At the threshold, the government argues that Willis' remarks were not offered to prove the truth of any matter asserted and thus were not open to impeachment, either under the Confrontation Clause or Rule 806. According to the government, Willis' statements were admitted merely to provide context to the conversations in which these defendants participated. The Burtons' own statements on the tapes were clearly admissible at trial as admissions or co-conspirator statements.[3] The government cites *United States v. Davis*, 890 F.2d 1373 (7th Cir.1989), certiorari denied, —— U.S. ——, 110 S.Ct. 1165, 107 L.Ed.2d 1068 (1990), to support the admissibility of Willis' statements:

> [T]he entirety of tape recorded conversations between a defendant and a third party informant are admissible where the defendant's statements are offered as verbal acts or omissions and the third party's statements are necessary to place

the defendant's statements in a proper context.

*Id.* at 1380. *Davis* holds additionally that when a third party's statements are admitted for the limited purpose of placing a defendant's utterances in context, the defendant has no Sixth Amendment right to confront the third party. The government believes that in this case, as in *Davis*, the Burtons were not prevented from cross-examining any "witness" because the third party's statements merely provided context for the defendants' own admissions. Thus according to the government there is no possible Sixth Amendment objection. Rule 806 is also inapplicable if Willis' statements only provided context because the rule addresses only the impeachment of "hearsay," which by definition is "a statement * * * offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c).

The government's contention that Willis' statements on the tapes were introduced merely to supply context to these defendants' statements is untenable. The government's initial proffer regarding the tapes characterized the Burtons' statements as co-conspirator statements admissible under Rule 801(d)(2)(E) but said nothing about the conditions under which Willis' statements on the tapes were being offered. At trial the jury heard the tapes without any admonishment to consider Willis' statements only for context and not for truthfulness.[4] The jury instructions at the close of evidence similarly contained no limiting instruction (Tr. at 405–406).

■ In the absence of any limiting instruction directing the jurors to use Willis' statements only to put Tyrone's and Le-

**2.** The Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI.

**3.** The government does not argue that Willis' statements are admissible as co-conspirator statements under Fed.R.Evid. 801(d)(2)(E). Because Willis was doing the government's bidding by engaging the defendants in conversation, it is doubtful that his statements could be characterized as "in furtherance of" the conspiracy. See *United States v. Ferra*, 900 F.2d 1057, 1059 (7th Cir.1990).

**4.** After defendants asked for the opportunity to inquire about Willis' prior convictions, the government did state that they were offering Willis' taped statements only for context. This statement was made at sidebar, however, out of the hearing of the jury (Tr. at 229–231). Our review of the trial transcript reveals that the jury never heard a limiting instruction, contrary to the assertions made at oral argument.

roy's statements in context, Willis' statements must be taken as hearsay testimony admitted against defendants which they had a right to impeach, both under the Confrontation Clause and under Rule 806. *Davis* does not hold differently. In *Davis*, the Court gave the proper limiting instruction. 890 F.2d at 1380. Because the jurors specifically had been told not to judge the truthfulness of the third party's statements, it could be assumed that the jurors had followed that instruction. *Id.*, quoting *Francis v. Franklin*, 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344; *Lee v. McCaughtry*, 892 F.2d 1318 (7th Cir.1990) (limiting instruction is proper way to limit jury's use of tape recording in manner consistent with Confrontation Clause), certiorari denied, —— U.S. ——, 110 S.Ct. 3244, 111 L.Ed.2d 754. Here no similar assumption can be made. The jurors were free to take Willis' statements as substantive evidence rather than as mere filler. Once Willis' statements were admitted without qualification, the defendants had a right to impeach his credibility.

In district court these defendants properly raised their right to impeachment under Rule 806. We must focus on the precise objection made at trial and the cross-examination requested by defendants. In his testimony, Agent Pearson described the investigation and introduced the tapes. After a tape-recorded conversation between Tyrone Burton and Willis had been played, Tyrone's counsel notified the judge that he would like to explore Willis' criminal background indirectly through cross-examination of Agent Pearson. He said at sidebar, "We think that under 806 we are permitted to do that" (Tr. 229). Tyrone's counsel read the rule correctly, for it allows one to impeach the credibility of a non-testifying hearsay declarant by any evidence that would be admissible had the declarant testified. *Smith v. Fairman*, 862 F.2d 630, 637 (7th Cir.1988), certiorari denied, 490 U.S. 1008, 109 S.Ct. 1645, 104 L.Ed.2d 160.

■ But Tyrone's counsel never asked the court to honor the distinct Sixth Amendment-based right he could have claimed: the opportunity to confront and cross-examine Willis himself.[5] The rule and the Amendment are not perfectly consonant. As the Supreme Court stated in *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970):

> While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete * * *. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied.

*Id.* at 155–156, 90 S.Ct. at 1933–1934. Rule 806 in effect allows the impeachment of a non-testifying hearsay declarant by the elicitation of statements from a testifying witness. On its face, the rule applies in the situation presented here, where the defendant seeks to attack the credibility of the declarant by having a third person recite declarant's criminal record. See, *e.g.*, *United States v. Wali*, 860 F.2d 588 (3rd Cir.1988) (court's refusal to allow defendant to impeach hearsay statements of one Esser by cross-examination of Drug Enforcement Administration agent Jack Short analyzed under Rule 806). The Confrontation Clause gives the defendant a different right: to demand the physical presence of declarant and an opportunity to cross-examine him or her. *Davis v. Alaska*, 415 U.S. 308, 315–316, 94 S.Ct. 1105, 1109–1110, 39 L.Ed.2d 347 (confrontation means ability to confront the witness physically and cross-examine witness); *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 ("Confrontation Clause reflects a preference for face-to-face confron-

---

**5.** Tyrone's counsel renewed his objection in a post-trial motion, but again termed it a Rule 806-based objection and not one rooted in the Sixth Amendment.

tation at trial"). Mysteriously, the Burtons never made this demand although direct confrontation of Willis presumably would have been preferable to indirect impeachment of Willis by Agent Pearson's testimony.

We do not mean to suggest that a properly made Rule 806 objection can never constitute a Confrontation Clause objection. For example, when the declarant is unavailable to testify, the defendant's Sixth Amendment right may be compromised if the court, in contravention of Rule 806, disallows cross-examination of a witness who does testify. This Court has commented that cross-examination of the testifying witness in such a case may be defendant's "only chance to place before the jury a legitimate question as to the truth of [the] hearsay declarations [of the unavailable declarant]." *Smith v. Fairman*, 862 F.2d at 638 (Sixth Amendment violation to prevent testifying witness from presenting evidence about prior inconsistent statements made by eyewitness who died before trial commenced).

In this case, however, it was never established that Willis was unavailable; the record reveals only that he was absent. The parties apparently disagreed about whether Willis was available or not (Tr. 80–81). The defendants could have clarified the matter simply by requesting that the government produce him [6] or by themselves asking that the court issue a subpoena for Willis to appear as a witness. See Fed.R.Crim.P. 17(a). Defendants never did so. In this circumstance, we cannot say that cross-examination of Agent Pearson was defendants' "only chance" to impeach Willis' credibility. Had Willis been subpoenaed, he may well have testified, thereby wholly vindicating the Sixth Amendment cross-examination rights the Burtons now claim.

Defendants' waiver of their Sixth Amendment objection does not preclude all review, but it limits our consideration to whether Willis' failure to testify infected the trial with "plain error." See Fed.R. Crim.P. 52(b); *United States v. Andrus*, 775 F.2d 825, 852 (7th Cir.1985). Plain error occurs when, in light of the entire record, the trial court's action had a probable impact on the finding of guilt. *Id.* Defendants' Rule 806 objection was properly raised, and we hold that the trial court abused its discretion in disallowing Agent Pearson's cross-examination. The jury's verdict will not be vacated, however, unless the district court's evidentiary ruling had a "substantial influence on the verdict." Fed.R.Crim.P. 52(a); *United States v. Grier*, 866 F.2d 908, 920 (7th Cir.1989). Because Willis' background was otherwise shown and the evidence of defendants' guilt was strong, we decline to order a new trial. The record reveals neither "probable impact" or "substantial influence" on the jury verdict exerted by the district court's evidentiary decision.

First, defendants were not deprived of their ability to impeach Willis' credibility simply because they could not question Willis or Agent Pearson about Willis' criminal record. The jurors heard ample evidence of Willis' past criminal activities. Agent Pearson introduced the tapes by speaking of the circumstances under which Willis' cooperation was obtained. The jurors heard that Willis was in jail in Davenport, Iowa, on charges that he had stolen a motor vehicle. Also, Willis' criminal background was apparent from the tapes played for the jury. Willis himself referred to the fact that he was on parole, and he readily acknowledged participating in tire and truck thefts. Leroy's counsel used this information to argue to the jury in his closing argument that "John Willis was a thief, a thug, and who knows what else," and that "John Willis * * * was a person who had been engaged in car thievery for a number of years * * *" (Tr. at 347–348). The jurors had plenty of infor-

---

6. When availability of a witness is challenged, the government bears the burden of demonstrating unavailability. The Supreme Court noted in *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597:

[T]he Sixth Amendment establishes a rule of necessity. In the usual case * * *, the prosecution must produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.

mation from which to conclude that Willis was no "choir boy," as Leroy's counsel put it. The verdict indicates that the jury believed Willis' statements anyway.

More importantly, the evidence against both Leroy and Tyrone on each of the charged counts was irrefutable. The volume of evidence presented against Tyrone was less than that brought forward to convict Leroy. Still, Tyrone clearly implicated himself on the conspiracy count. On the single tape which included his own statements, he admits to his participation in two thefts in Cape Girardeau, Missouri.[7] This admission was corroborated by testimony from Gabriel Johnson, a member of the tire theft ring who became a cooperating witness.[8] Johnson testified that he and Tyrone had indeed broken into a Kelly–Springfield tire outlet and taken a load of tires and a Chevrolet truck back to Hub Cap City. On the tape, Tyrone also discusses with Willis his plans to steal tires from a Great Lakes Tire warehouse in Ohio. He complains about the fact that he has driven "all over the God–Damn United States" but has been paid too little for his efforts. From this evidence[9] a jury could easily have concluded that Tyrone knowingly participated in the conspiratorial scheme. See *United States v. Missick*, 875 F.2d 1294, 1297 (7th Cir.1989).

Tyrone's conviction for transporting a stolen motor vehicle in interstate commerce likewise is unassailable. Tyrone discusses on tape the fact that he "got a truck one time" from the tireyard in Cape Girardeau. Gabriel Johnson verified at trial that the two had loaded a truck with tires and brought it back to Hub Cap City. Tyrone protests that because Johnson testified that Johnson himself was the driver on the journey, Tyrone's conviction for violating 18 U.S.C. § 2312 must be overturned. The argument is meritless. See *Lawrence v.*

*United States*, 400 F.2d 624, 626 (9th Cir. 1968) (mere occupation of vehicle with knowledge it is stolen does not support § 2312 conviction, but evidence of active assistance in the illegal enterprise is sufficient).

The evidence against Leroy at trial was simply overwhelming. All six of the other audiotapes feature his admissions. He was not on the videotape of the final theft from the Hammond, Indiana, warehouse because he chose to stay behind while his confederates did the risky work. The audiotape of the same event, however, reveals that Leroy coordinated the activities of the others. Leroy has no credible claim that the evidence was ambiguous and he does not even attempt to argue in his brief that his case was compromised by the district court's decision not to allow further cross-examination of Agent Pearson.

No plain error occurred as a result of Willis' failure to testify. Furthermore, the jury's verdict was not substantially influenced by the limitation of Agent Pearson's testimony. The defendants' argument that they are entitled to a new trial on the basis of either the Confrontation Clause or Rule 806 thus is without merit.

*Sufficiency of the Evidence*

Tyrone Burton in addition questions the sufficiency of the evidence against him on both charged counts. His arguments are answered by the discussion above. Viewing the evidence in the light most favorable to the government, there is little doubt that a rational trier of fact could have found the essential elements of the crimes with which Tyrone was charged. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560.

## CONCLUSION

The convictions of Leroy and Tyrone Burton are affirmed.

---

**7.** Tyrone speaks of "hit[ting] up" the Cape Girardeau warehouse twice, taking car tires and a truck tire (R. Item 116, Exh. D at 7–8).

**8.** Tyrone Burton argues at length that Johnson's testimony lacked credibility. This, of course, was a determination for the jury to make. See *United States v. Liefer*, 778 F.2d 1236, 1247 (7th Cir.1985).

**9.** Tyrone complains in his brief to this Court that the prosecutor confused some of Willis' incriminating statements with those of Tyrone in closing argument. However, Tyrone did not object to these statements at trial, and they were not so prejudicial or egregious as to amount to plain error. See *United States v. Carter*, 720 F.2d 941, 950 (7th Cir.1983).

RIPPLE, Circuit Judge, concurring.

The confrontation clause issue raised by the defendants is a difficult one. A review of the record convinces me that defense counsel's objection was adequate to place the trial court and counsel for the government on notice with respect to the sixth amendment implications of the testimonial situation before the court. Therefore, I cannot join my brother's suggestion that the issue was "waived." Nevertheless, the defendants had available "comparable means," *Smith v. Fairman,* 862 F.2d 630, 638 (7th Cir.1988), *cert. denied,* 490 U.S. 1008, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989), to undermine the credibility of Willis. On that basis, I must conclude that there was no violation of the confrontation clause. *See Nance v. Fairman,* 707 F.2d 936, 942 & n. 7 (7th Cir.1983). *See also United States v. Dempewolf,* 817 F.2d 1318, 1321 (8th Cir.), *cert. denied,* 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987).