980 F.2d 739
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Janice MCCULLOCH, Defendant-Appellant.
 No. 90-10410.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 11, 1992.
Decided Nov. 3, 1992.
 
 Before REINHARDT, NOONAN and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This case, like many others, arises from an automobile collision in California. Unlike most such cases, however, this one is a criminal prosecution. Specifically, the appellant was charged with and convicted of seven counts of mail fraud arising from an alleged conspiracy to defraud her automobile insurer. On appeal, she raises several claims of error.
 
 Facts
 
 3
 On June 11, 1986 in Hayward, California, Janice McCulloch had an automobile collision with codefendants Isaac O. Rodrigues and Ronald Freitas. McCulloch was driving her own automobile which was insured by Farmers Insurance Group through a policy she had purchased two months earlier. Rodrigues was driving the other car and Freitas was the passenger. Paramedics took both Rodrigues and Freitas to the hospital. The California Highway Patrol conducted an investigation and concluded that McCulloch was at fault. All three filed claims with Farmer's Insurance: Rodrigues received a settlement of $40,000, plus reimbursement for medical expenses; Freitas received a settlement of $50,000, plus reimbursement of medical expenses and the defendant received $812.00 for damage to her car. A month later, she acquired a used BMW valued at over $3,000.
 
 
 4
 In making statements both to the California Highway Patrol and the insurance company, McCulloch did not mention that she knew Rodrigues, when in fact, she had had an affair with him and had given birth to his son a month earlier. She also denied knowing Freitas before the day of the collision.
 
 
 5
 On March 31, 1989, the grand jury returned an indictment against McCulloch on seven counts of mail fraud stemming from the automobile collision. Also named in the indictment were Rodrigues and Freitas. Rodrigues, named in 22 counts, pleaded guilty to two and agreed to testify against the other two defendants. Both McCulloch and Freitas pleaded not guilty. The government charged that during the Spring of 1986, the defendant, Rodrigues, Freitas and an uncharged co-conspirator, Ricardo Scarano, made plans to stage the accident in order to collect insurance money. McCulloch moved to sever her trial from codefendant Freitas so that his attorney would be able to testify in her behalf. She argued that the attorney could present valuable impeachment evidence against Rodrigues, the government's chief witness. The motion was denied.
 
 
 6
 During jury selection, the defendant objected to the government's challenge for cause of a black, female venireman, the third black venireman removed by the government, and requested a hearing under Batson v. Kentucky. The district court denied the request stating that there were no grounds for a Batson hearing since four black veniremen remained in the jury pool.
 
 
 7
 At trial, pursuant to Federal Rules of Evidence 801(d)(2)(E), the district court allowed the government to introduce various out-of-court statements by Scarano as co-conspirator statements, but denied the defendant's motion to present an out-of-court impeaching statement under Rule 806. Additionally, to rebut McCulloch's assertion that she had never met Freitas until the day of the collision, the government confronted her during cross-examination with a photograph of herself and Freitas that Rodrigues later testified he took several months before the automobile collision. Defendant objected to the introduction of the photograph as a violation of Federal Rules of Criminal Procedure 16(a)(1)(C) and moved for a mistrial.
 
 
 8
 The district court rejected McCulloch's claims, and she was found guilty on all counts and received a three year term of imprisonment. She timely appeals.
 
 
 9
 McCulloch raises four issues on appeal: violation of Federal Rules of Criminal Procedure 16, denial of her motion for severance, denial of the introduction of an out-of-court statement under Federal Rules of Evidence 806 and allowing the government's challenge for cause of a black, female venireman.
 
 Discussion
 
 10
 Federal Rule of Criminal Procedure 16(a)(1)(C) allows a defendant to receive, upon request, any photographs within the possession of the government that: (1) are "material to the preparation of the defendant's defense," (2) are "intended for use by the government as evidence in chief at the trial," or (3) "were obtained from or belong to the defendant." As the photograph of McCulloch and Freitas was neither obtained from the defendant nor belonged to her, she is entitled to it under Rule 16 only if it is either part of the government's evidence in chief or is material to her defense.
 
 
 11
 We have previously held that evidence used by the government solely for rebuttal purposes will not constitute part of the government's evidence in chief. See United States v. Givens, 767 F.2d 574, 583 (9th Cir.), cert. denied, 474 U.S. 953 (1985). In Givens, the defendant had asserted that he owned only a single pair of sneakers and that the sneakers did not match the shoe print left by the perpetrator at the scene of the crime. The government rebutted the defendant's contention by introducing testimony that he actually owned more than a single pair of sneakers. We held that this evidence was not discoverable by the defendant as part of the government's "evidence in chief" because it was used to rebut the defendant's defense and not to advance the government's affirmative case. Similarly, in the instant case, the photograph of McCulloch and Freitas was used to rebut the defendant's contention that she had never met Freitas before the accident and not to demonstrate the government's affirmative case. The fact that the photograph had some tendency to further the government's contention that McCulloch and Freitas were co-conspirators does not alter its primary value for evidentiary purposes, or the use to which the prosecution intended to and did put it--rebuttal evidence. The fact that the photograph might have assisted the prosecution in proving its direct case does not render the photograph "evidence in chief" notwithstanding its intended and actual use. See id. ("The fact that [the testimony] provided some remote corroboration for the eyewitness testimony that Givens was the perpetrator does not establish that it was 'intended for use by the government as evidence in chief at the trial.' "). Thus, the photograph was not discoverable under Rule 16 on that ground.
 
 
 12
 A more difficult question is whether the photograph was "material to the preparation of the defense." It is unclear how far the discovery obligation imposed by this clause extends. Evidence which is exculpatory, or which will lead to exculpatory evidence, or which is useful for impeaching government witnesses is clearly covered. See, e.g., United States v. McCrane, 547 F.2d 204 (3d Cir.1976) (requiring disclosure of evidence impeaching credibility of government's principal witness). Further, we have said that evidence is discoverable under the material-to-the-defense clause if its discovery will "substantially alter the quantum of proof in [the defendant's] favor", United States v. Marshall, 532 F.2d 1279, 1289 (9th Cir.1976), or if it is "relevant to the development of a possible defense." U.S. v. Mandel, 914 F.2d 1215, 1219 (9th Cir.1990). While these formulations sound rather expansive, they lack precision and they do not address the type of discovery request at issue here--a request for government evidence rebutting a particular defense trial position. The cases which do reach the precise issue posed in this case are from outside this circuit, and they are adverse to McCulloch. See United States v. Delia, 944 F.2d 1010, 1017 (2nd Cir.1991) (the government is not required under any prong of Rule 16 to disclose rebuttal evidence which it intends to use against a proposed line of defense); United States v. Presser, 844 F.2d 1275, 1285 (6th Cir.1988) (trial court order requiring the government to disclose "any and all impeachment evidence ... which tends to negate guilt", including rebuttal evidence, exceeded the scope of the court's authority under Rule 16); Cf. United States v. Marquez, 686 F.Supp. 1354 (N.D.Ill.1988).
 
 
 13
 We need not determine what result we would reach were we to try to reconcile this Circuit's expansive but vague formulations of the material-to-the-defense clause with the more precise holdings of the Second and Sixth Circuits. We need not embark on that enterprise because, assuming the defense was entitled to the photograph, the government's failure to produce it constitutes harmless error.
 
 
 14
 Failure to produce materials properly requested under Rule 16 requires reversal if the defendant shows that the non-disclosure of the materials prejudiced him. See United States v. Michaels, 796 F.2d 1112, 1115 (9th Cir.1986); United States v. Gee, 695 F.2d 1165, 1167 (9th Cir.1983); see also United States v. Phillip, 948 F.2d 241, 251 (6th Cir.1991). Here, McCulloch has not shown that she was prejudiced by non-disclosure of the photograph. McCulloch does not assert that, if she had known of the photograph, she would not have claimed that she had never met Freitas before the collision. Rather, she claims that disclosure of the photograph would have enabled her to "explain it away" when presented by the government. McCulloch does not, however, explain how additional notice of the photograph would have aided her in explaining it away.
 
 
 15
 McCulloch suggests two "innocent" explanations for the photograph: that the photograph depicted her standing with Freitas but did not evidence that the two of them had ever formally met, or that she briefly met Freitas before the accident, was photographed with him, and forgot the introduction by the time of the accident. We fail to see how advance notice of the photograph would have enabled the defense to present these arguments with any more effectiveness than was done at trial. Specifically, we fail to see how the defense could have discovered any evidence which would have decisively strengthened the argument that the photograph merely depicted Freitas and McCulloch in chance proximity to each other, and we are all but certain the defense could not have "proved" that McCulloch merely "forgot" a prior meeting. In short, we believe that only a limited number of explanations for the photograph were available to the defense, and that these explanations were not of a kind susceptible to proof by advance investigation.[1] On the contrary, the defense was perfectly capable of asserting these explanations at trial.
 
 
 16
 Even, however, if advance notice of the photograph would have enabled McCulloch to conclusively refute the inference that she perjured herself when she denied knowing Freitas before the accident, it is highly improbable that the result at trial would have been different. Freitas was merely the passenger in the car with which McCulloch collided. The other car was driven by the father of her child, Isaac Rodrigues. From 1984 until April 1986, McCulloch had been driving uninsured. In April, McCulloch, who was unemployed at the time, purchased an automobile insurance policy with annual premiums in excess of the $1200 purchase price of her car. Two months later, she collided with a car driven by Rodrigues. One month after the accident, Rodrigues gave her a $3,000 used BMW. Approximately two months after the accident, she cancelled her automobile insurance, and continued to drive uninsured for another two years. McCulloch failed to mention to the insurance claims agent that she knew Rodrigues. And finally, Rodrigues testified at trial that the accident was staged.
 
 
 17
 In sum, on the facts of this case, we hold that the defendant has failed to show that she was prejudiced by the government's failure to disclose the photograph. The error was, without doubt, harmless.
 
 
 18
 The defendant next asserts that the district court erred in denying her motion to sever her trial from that of her codefendant Freitas. The defendant claims that she was prepared to introduce testimony by Freitas' attorney, Mr. Wolf, that would impeach Rodrigues' testimony on behalf of the government and that she was prevented from introducing such evidence as a result of the advocate-witness rule. See United States v. Prantil, 764 F.2d 548, 552-53 (9th Cir.1985).
 
 
 19
 We will reverse a district court's refusal to sever a joint trial only if the defendant can demonstrate "that the joint trial was so prejudiced as to require the exercise of the district judge's discretion in only one way: by ordering a separate trial." United States v. Mariscal, 939 F.2d 884, 885 (9th Cir.1991). When the defendant seeks severance in order to obtain testimony otherwise not available, the appropriateness of severance is judged by the good faith of the defendant's intention to use the testimony, the possible weight and credibility of the testimony, the likelihood that the testimony will in fact materialize, and the economy of a joint trial. See id.
 
 
 20
 In this case, Wolf's potential testimony is simply not sufficiently weighty to warrant reversal. Rodrigues admitted on the stand the substance of the conversation he had with Wolf and which the defendant sought to introduce through Wolf's testimony; namely, that Rodrigues had told Wolf he believed the collision was actually accidental. The only thing Rodrigues failed to admit was that he had told Wolf he believed McCulloch had not really denied knowing him (Rodrigues), but had merely failed to mention the association due to his previous instructions to her to avoid the subject. McCulloch asserts that this latter point sufficiently impeaches Rodrigues' credibility that her inability to introduce it substantially prejudiced her defense. However, this point would have only incrementally added to the already substantial amount of impeachment evidence McCulloch had introduced. Indeed, before the trial court, McCulloch argued that the crucial part of Wolf's testimony was Rodrigues' admission that the collision was accidental; she only raised her present contention after Rodrigues himself testified to the earlier point. Under these circumstances, we find that Wolf's testimony would have added little to McCulloch's defense, and, accordingly, the district court did not abuse its discretion in refusing to sever the trials.
 
 
 21
 McCulloch next asserts that the district court improperly excluded evidence under Fed.R.Evid. 806 which impeached an out-of-court statement introduced by the government under Rule 801(d)(2)(E). During direct examination of Rodrigues, the district court allowed two out-of-court statements by the uncharged co-conspirator, Scarano, to be admitted pursuant to Rule 801(d)(2)(E), which allows statements of co-conspirators to be admitted as substantive evidence against a defendant. In the statements, Scarano indicated that he, Freitas and the defendant "were talking about planning an accident" and that the defendant would receive $5,000 for "participating in this scheme or collision." Defendant then attempted to introduce an additional out-of-court statement made by Scarano in which he emphatically denied being "involved in any agreement concerning a staged automobile accident with ... Janice McCulloch," but the district court refused to admit the proffered evidence.
 
 
 22
 In United States v. Bernal, 719 F.2d 1475 (9th Cir.1983), we held that Rule 806 allows a defendant to introduce a declarant's out-of-court statements to bolster the declarant's credibility after the government has introduced that declarant's out-of-court statements for impeachment purposes. See id. at 1478. Similarly, the rule allows a defendant to introduce out-of-court statements to impeach a declarant after the government has introduced his out-of-court statements as affirmative evidence. Thus, we conclude that the district court erred in excluding the proffered out of court declaration.[2]
 
 
 23
 Although the district court erroneously excluded relevant evidence, we will not reverse the conviction if the error was more likely than not harmless. See United States v. Browne, 829 F.2d 760, 766 (9th Cir.1987). Here, the error prevented McCulloch from more effectively impeaching Scarano. However, Scarano was impeached on other grounds. Further, the Scarano statements McCulloch sought to impeach are largely cumulative, since there is other evidence that demonstrates both that she may have known Freitas and that she was somehow involved in the scheme. Moreover, it is far from clear that the jury would have believed that Scarano was telling the truth when he denied being involved in a scheme with the defendant. In any event, in addition to Scarano's out-of-court statements, the government had the testimony of its chief witness Rodrigues, the inaccurate statements McCulloch made to the California Highway Patrol and to her insurance company, the peculiar timing of McCulloch's insurance policy, and the acquisition of the BMW. Simply eliminating or impeaching Scarano's statement would not damage the government's case. Accordingly, the district court's exclusion of Scarano's out-of-court statements did not constitute reversible error.
 
 
 24
 Finally, the defendant asserts that the district court improperly sustained the government's challenge-for-cause of a black juror in violation of Batson v. Kentucky, 476 U.S. 79 (1986). We need not decide whether the Batson framework applies to challenges for cause, as, even under Batson, the district court did not err--the government provided a more than adequate explanation of its challenge. The excused juror had recently recovered from a rape and stabbing at the hands of her ex-boyfriend. She expressed concerns about whether she could handle the rigors of a trial: "I just can't, you know, take the pressure of sitting in a jury trying to, you know, explore the evidence and tell who's guilty and stuff." Although she indicated to the court that she felt she could render a fair verdict, the government argued, and the court agreed, that she seemed too "emotional." The juror's residual reactions to the rape and violent attack by her boyfriend left reasonable doubts in both the minds of the government and the district judge that she would be able to handle the trial. The government was justified in challenging her, and the district court acted properly in striking her. Thus, the defendant's assertion fails.
 
 Conclusion
 
 25
 The defendant has raised four claims of error on her appeal, none of which warrants reversal of her conviction.
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided for by 9th Cir.R. 21
 
 
 [1]
 It is conceivable that other explanations exist besides the two advanced on appeal, but the defense does not meet its burden of showing prejudice merely by asserting in the abstract that, given advance notice, it could have explained the photograph away
 
 
 [2]
 The government's assertion that Rule 806 is not applicable where the declarant is available to testify is contradicted by the absence of any such qualification in the rule itself, and in any case has been rejected explicitly. See United States v. Wali, 860 F.2d 588, 591 (3d Cir.1988)